ABERNETHY LAND & FINANCE COMPANY, JULIUS W. ABERNETHY, FOREST SCHRUM, AND LOUIS SCHRUM v. FIRST SECURITY TRUST COMPANY, ADMINISTRATOR OF THE ESTATE OF JOHN P. YOUNT, DECEASED, AND ADMINISTRATOR OF THE ESTATE OF WILFONG YOUNT, DECEASED; WADE H. LEFLER, CLERK SUPERIOR COURT, CATAWBA COUNTY; O. D. BARRS, SHERIFF, CATAWBA COUNTY; AND JOHN R. IRVIN, JR., SHERIFF, MECKLENBURG COUNTY.

(Filed 30 November, 1938.)

1. **Execution § 17—Manner of statement of facts relied on by judgment debtor to overcome report of sale made by sheriff and character of evidence establishing them, held not prejudicial.**

In this controversy between the judgment debtor and the junior lienor, which bid in the property at the execution sale, as to the amount of the bid, *it is held*, the verdict of the jury upon competent evidence establishing the amount of the bid as contended for by the judgment debtor is conclusive, and the charge of the court in stating the character of evidence necessary to overcome the sheriff's report of sale *is held* not prejudicial upon the junior lienor's objection to the manner in which the facts relied on by the judgment debtor to overcome the report were stated, even though the instruction might have been more aptly given in different form.

2. **Trial § 29b—**

When the manner in which the court states the evidence is not prejudicial, the instruction will not be held for error even though the instruction might have been more aptly given in different form.

**3. Execution § 17—Form of issue as to amount of bid at execution sale held not prejudicial.**

In this controversy between the judgment debtor and the purchaser at the execution sale as to the amount of the bid, the form of the issue submitted *is held* not prejudicial, since it presented for the jury's determination the controverted amount of the bid, and the inclusion therein of matters relating to assumption of prior liens by the purchaser are deemed harmless surplusage.

**4. Execution § 21—Judgment debtor is entitled as matter of law to have surplus under execution of junior lien applied to senior liens.**

The verdict of the jury established that the junior lienor purchasing the property at the execution sale bid an amount sufficient to pay the judgment and the senior liens. *Held:* The judgment debtor is entitled to have the surplus applied to the senior liens as a matter of law, and as to the judgment debtor any agreement between the junior and senior lienors as to the payment of the senior liens and the purchase of the prior judgment is immaterial.

**5. Executors and Administrators § 10—Administrator may purchase property at execution sale to protect claim of estate.**

Where an estate owns a judgment against lands subject to senior liens, the administrator may protect the interest of the estate by purchasing the property at the execution sale, and may bid more than the amount of the estate's judgment in purchasing the land, in its discretion within reasonable limits in the exercise of good faith, which transaction will be regarded as an investment of funds of the estate in the land and not as creating a debt of the estate, and only the beneficiaries of the estate may object thereto, and the administrator may not attack its own bid as being *ultra vires* in seeking to repudiate the transaction.

APPEAL by defendants from *Rousseau, J.,* at May Term, 1938, of CATAWBA. No error.

One of the defendants, the Consolidated Trust Company, on June 29, 1931, obtained a judgment against the Abernethy Land & Finance Company and others, movants in this proceeding, in the amount of $6,750.00, with interest and costs, which was a first judgment lien on their real estate. Thereafter, on June 6, 1932, the First Security Trust Company, administrator of the John P. Yount Estate, secured judgments against the same plaintiffs on two $10,000 items, with interest and costs, which judgments became the second docketed lien against the property involved in this controversy. There were liens for taxes and street improvement assessments amounting to the sum of $5,680.11.

Desiring to issue an execution on its judgments, the First Security Trust Company, as contended by plaintiffs, approached the holder of the senior judgment—the Consolidated Trust Company—and entered into an arrangement by which the Consolidated Trust Company should refrain from execution on its judgment; and it was agreed that the

latter should be paid all of its claim, according to an agreed schedule, by the First Security Trust Company. In the event the First Security Trust Company should become the last and highest bidder at an execution sale upon its judgment, the latter would turn over to the Consolidated Trust Company the net proceeds, less taxes and expenses of any resale it might be able to make.

Subsequent to this agreement, the First Security Trust Company caused execution to issue, and on the 14th day of January, 1935, the sheriff of Catawba County sold, under such execution, 28 tracts or parcels of land of the Finance Company, judgment debtor, at the courthouse door in Newton, the property first being offered in parcels and then being sold as a whole. Thereupon, the Trust Company credited its judgment with the sum of $16,466.54 and the cost of the execution sale, making a total of $17,059.52.

Subsequently, the Finance Company enjoined further proceedings, on account of the inadequacy of the bid, claiming the property to be worth $75,000; but the restraining order was dissolved and an appeal which had been taken to the Supreme Court was abandoned.

The First Security Trust Company started supplementary proceedings against the Finance Company, J. W. Abernethy and others, and a compromise was reached between the Trust Company, Administrator, and the Finance Company and J. W. Abernethy, under which the Administrator's judgment against the Finance Company and Abernethy were to be canceled and discharged, and in compliance with the terms of this agreement Abernethy conveyed certain lands and paid the Administrator an additional sum of $3,100, whereupon the Administrator, First Security Trust Company, cancelled its judgments.

The First Security Trust Company paid to the Consolidated Trust Company, upon the senior judgment, $4,486.50 on April 23, 1936, and the balance of $4,225.44 during August, 1936; whereupon, the Consolidated Trust Company executed an assignment to the First Security Trust Company, Administrator, transferring, without recourse, any interest it might have in the judgment.

Thereupon, the First Security Trust Company, Administrator, issued execution on the Consolidated Trust Company judgment assigned to it, and the defendants Abernethy, Forest Schrum and Louis Schrum, brought this action to enjoin sale under the execution and to require cancellation of the judgment.

Upon the trial of the cause, there was evidence on the part of the respondent that its bid at the sale of the lands on the Yount judgments was $17,059.52, and there was evidence on the part of the movants that

the bid was $31,000, including assumption of the Consolidated Trust Company judgment and the outstanding taxes and assessments against the property. The jury found for the movants, their verdict being as follows:

"Did the First Security Trust Company, Administrator of the J. P. Yount Estate, bid the sum of Thirty-one Thousand Dollars at the execution sale of Abernethy Land and Finance Company lands, and include in said bid the assumption of the Consolidated Trust Company prior judgment, taxes, and street assessments on said properties? Answer: 'Yes.'"

From the judgment thereupon, the defendants appealed.

*W. C. Feimster and Thos. P. Pruitt for plaintiffs, appellees.*
*W. A. Self and C. Davis Swift for defendants, appellants.*

SEAWELL, J. The present controversy came before this Court on appeal by the plaintiffs from the judgment rendered in the Superior Court of Catawba County, dismissing an action to enjoin the execution sale of a judgment rendered in favor of the Consolidated Trust Company which the defendant First Security Trust Company claimed to have purchased. *Finance Co. v. Trust Co.,* 213 N. C., 369. Since it appeared that the controversy was over an execution sale of property of the plaintiffs on a judgment rendered in favor of the First Security Trust Company against them, in which the amount bid at the sale was in question, the court chose to treat the action as a motion in the original cause and remanded it to the court below for appropriate proceeding on such motion.

In remanding the case the Court said: "As the merits of the case have not been determined by the court below, and the rights of the parties depend upon the nature and extent of agreement entered into by and between the defendant administrator and the Consolidated Trust Company, we refrain from discussing the other questions at law raised in the briefs. It may be appropriate to say, however, that the present record does not disclose any judgments junior to the one obtained by the defendant administrator, and that if in fact the bid at the execution sale was $31,000, as contended by the plaintiffs, nothing else appearing, the plaintiffs, as a matter of law, are entitled to have the excess over and above the amount necessary to pay the judgment held by the defendant administrator applied to the satisfaction of the judgment obtained by the Consolidated Trust Company."

The verdict of the jury found that the bid of the First Security Trust Company at the auction sale under review was $31,000, thereby supporting the contention of the movants. We think this verdict, upon

evidence which we are constrained to think competent, largely disposes of the whole controversy and reduces the field of legal inquiry.

The respondents objected to the instruction of his Honor relating to the character of the evidence necessary to overcome the report of the sale made by the sheriff, in which the bid was stated to be $17,500. The criticism is aimed at the manner in which his Honor classified the facts which the movants were attempting to establish by such evidence. While perhaps the instruction might have been given more aptly in a different form, we cannot see that it caused substantial prejudice to respondents' cause, and we do not hold it for reversible error.

Respondents also excepted to the issue submitted to the jury and to the refusal to submit more particular and elaborate issues tendered by them. We think, however, that the issue submitted was sufficient to determine the issues raised in the pleadings and evidence, and while it included more than might have been necessary for that purpose, and was somewhat responsive to the wide scope taken in this investigation, some of which we think unnecessary, the additions related merely to matters of legal requirement, in the event that the First Security Trust Company bid $31,000 at the sale, and may be treated as surplusage. We do not find that the respondents were prejudiced by its submission in this form.

We need not inquire too deeply into the character of the transaction between the First Security Trust Company and the Consolidated Trust Company, whereby this respondent claimed to have purchased the Consolidated Trust Company judgment, upon which it proposed to issue execution against the lands of movants. Under the verdict of the jury and applicable law, it became the legal duty of the respondent, First Security Trust Company, to apply the proceeds of the sale, as far as they might be adequate and available, to the Consolidated Trust Company judgment, which was a senior judgment and had a prior lien upon the property sold. It appears from the verdict of the jury and the calculation from undisputed data that the proceeds of the sale were adequate for that purpose.

It appears that whatever agreement was made between the First Security Trust Company and the Consolidated Trust Company with regard to the latter's judgment was carried out after the sale, by the application of funds in the hands of the Security Trust Company, as administrator, to the Consolidated Trust Company's judgment. For the purpose of this proceeding it does not matter whether this was in pursuance of a contract of purchase, whereby the ownership was supposed to vest in the Security Trust Company, or otherwise, since, as we have stated, the law itself imposed the obligation upon the Security Trust Company to apply the proceeds of the sale in its hands in settlement of the judgment.

We do not think that the plea of the respondent Trust Company that it went beyond its authority, as administrator, in bidding more than the amount of its judgment and could not bind the estate by a new contract of that type is tenable.

The purchase of the movants' lands at the execution sale by this respondent cannot be classed as a new contract or creating a new liability upon this estate to be subsequently enforced. In contemplation of law, the application of the funds of the estate might be held to have been made. At any rate, the transaction may be classed as an investment in the land, for the purpose of protecting the assets of the estate.

The respondents admit that the administrator had the right to bid the amount of the judgment and interest—some $27,000 or more—in protecting the assets of the estate, a debt which was then secured by judgment on lands which might have been sacrificed at the sale for want of an adequate bid. Conceding that it had such a right, we do not hold that the amount the administrator could bid at such a sale must be rigidly determined by the amount of the debt due the estate, which he is endeavoring to protect and collect. It must rest upon sound business judgment and prudence, under a discretion which must be exercised in good faith and within reasonable limits, so as not to waste or imperil the assets of the estate or "throw good money after bad."

Schouler on Executors and Administrators, 6th edition, section 2330, holds that it is proper for the administrator to purchase real estate at a foreclosure sale where such a course is necessary to protect a claim of the decedent's estate against the mortgagor. In the case at bar, the estate held a lien on the property which the administrator had reason to believe might be sacrificed at the execution sale because of the existence of smaller prior liens, and its purchase of the land at the execution sale will not now be held *ultra vires*.

But we do not think the administrator can avail itself of that defense on this record. Our understanding of the law is that where an administrator has made an unauthorized investment, beneficiaries of the estate may elect to disaffirm the transaction and hold the administrator liable, or to ratify the act and accept the benefit. 24 C. J., page 72, section 494. There is no suggestion in this case that there has been any such repudiation of the purchase made by the First Security Trust Company, and at present that seems to be a matter which should be left between the administrator and those beneficially interested in the estate.

In the trial and judgment, we find

No error.