SUPERIOR FOODS, INC. v. HARRIS-TEETER SUPER MARKETS, INC., AND MERICO, INC.

No. 122

(Filed 27 August 1975)

1. Appeal and Error § 42— case on appeal — failure to include all evidence — only relevant evidence necessary

    The Court of Appeals erred in declining to pass on three of plaintiff's assignments of error on the ground that all of the evidence was not sent up where the record contained a stipulation between counsel that the record on appeal contained "the necessary and relevant portions of the record and case on appeal needed to explain the exceptions and errors assigned."

2. Appeal and Error § 42— sufficiency of evidence to support charge — evidence required in case on appeal

    It is not required that *all* the evidence in a case accompany an exception based on the insufficiency of the evidence to support an instruction to the jury; rather, only evidence toward which an instruction is directed must be included in the record on appeal.

3. Contracts § 28— breach of contract action — instructions — sufficiency of evidence to support

    In an action to recover damages for breach of a contract by which plaintiff contracted with defendant Harris-Teeter to supply defendant with biscuits packaged under a private label, evidence was sufficient to support the trial court's charge that the evidence would permit the jury to find any one of three factual variations to constitute the agreement between plaintiff and defendant.

4. Contracts § 17— time of termination — instructions proper

    In an action to recover damages for breach of a contract by which plaintiff contracted with defendant Harris-Teeter to supply defendant with biscuits packaged under a private label, the trial court did not err in failing to instruct the jury that a contract terminable at will, as here, could not be terminated by one party after the other party had performed acts thereunder which entitled him to compensation

where defendant terminated the contract, plaintiff was left with a six to eight months' inventory of private labels and materials suitable only for the use of defendant, and defendant instructed plaintiff to make the materials available to another supplier of biscuits but plaintiff failed to take action until three months later.

5. **Rules of Civil Procedure § 49— issue of fact — right to jury determination — waiver**

The right to have an issue of fact determined by the jury is waived unless a party demands its submission before the jury retires. G.S. 1A-1, Rule 49(c).

6. **Customs and Usages — usage of trade — jury question unless written**

Ordinarily, the existence and the scope of a usage of trade are questions of fact to be determined by the fact finder; however, when it is established that a usage of trade is embodied in a written code or similar writing, the interpretation of the writing becomes a question of law for the court. G.S. 25-1-205(2).

7. **Customs and Usages; Rules of Civil Procedure § 49— unwritten usage of trade — waiver of jury question**

The trial court was not required to instruct the jury on the relevant law of usage of trade, though the alleged usage of trade was not in writing, where plaintiff made no demand for submission to the jury of an issue as to its existence and thereby waived its right to have the issue determined by the jury; and since the trial judge himself made no finding on the issue, he is deemed to have made a finding in accord with the judgment entered.

ON *certiorari* to the Court of Appeals to review its decision, 24 N.C. App. 447, 210 S.E. 2d 900 (1975), finding no error in judgment of *Ervin, J.,* 1 April 1974 Session, MECKLENBURG Superior Court.

This is a civil action to recover damages for breach of contract.

Plaintiff is a manufacturer of refrigerated biscuits. In 1968 it contracted with Harris-Teeter Super Markets, Inc. (Harris-Teeter) to supply that defendant with biscuits packaged under a private label. This made it necessary for plaintiff to acquire a substantial stock of materials, including cans and labels which could not be used in the performance of plaintiff's contracts with other customers.

Plaintiff acquired, and at all times maintained during the continuance of its contract with Harris-Teeter, an inventory of such materials sufficient for six to eight months' use. From 1968 until 2 July 1971, plaintiff maintained its inventory and

promptly supplied Harris-Teeter with its biscuit requirements appropriately packaged in cans with private labels thereon.

On 2 July 1971 plaintiff had on hand a six to eight months' inventory of private labels and materials suitable only for the private use of Harris-Teeter. On that date said defendant terminated its contract and entered into a contract with its codefendant, Merico, Inc., to buy biscuit requirements, including private labels and materials, from Merico, Inc.

Plaintiff alleges that pursuant to the terms of its contract with Harris-Teeter, and by reason of a course of dealing and usage in the trade, Harris-Teeter was obligated "to take and pay plaintiff for the aforesaid private labels and materials manufactured for the private use of the defendant Harris-Teeter Super Markets, Inc." Said defendant allegedly breached its obligation and agreement and wrongfully failed and refused to take or pay plaintiff for the private labels and materials on hand at the time the contract was terminated.

Plaintiff alleges that there is in the trade a course of dealing and usage by which the retailer (Harris-Teeter), before such arrangement is terminated, gives at least fifteen to thirty days' notice during which the new supplier (Merico, Inc.) contacts the old supplier (Superior Foods, Inc.) and arranges to pick up the inventory of private labels and related materials, the old and the new supplier agreeing at that time upon costs involved, etc. Plaintiff alleged and offered evidence tending to show that Merico, Inc., did not do this.

Plaintiff alleges and offered evidence tending to show that by reason of the breach of contract by defendants plaintiff has been damaged in the sum of $25,000 and is entitled to recover that amount from defendants jointly and severally.

Harris-Teeter admits in its answer that, pursuant to an agreement between the parties, plaintiff supplied it with biscuits packaged in containers bearing the private label of Harris-Teeter; that said arrangement continued from 1968 until July 1971 when it made arrangements to purchase its packaged biscuits from Merico, Inc. All other material allegations are denied.

Merico, Inc., admits in its answer that it sought the business, and beginning on 12 July 1971 Harris-Teeter purchased certain labels, packaging materials and biscuits from Merico,

Inc. It further admits that beginning in 1968 plaintiff supplied Harris-Teeter with biscuits packaged in containers with private labels attached and that the process of manufacturing and printing private labels and materials and packaging biscuits ordinarily requires about eight weeks. Merico, Inc., denies all other material allegations.

Evidence offered by plaintiff in support of its allegations, including the Harris-Teeter termination letter dated 2 July 1971, will be reviewed in the opinion.

Defendants offered no evidence.

At the close of plaintiff's evidence the motion of Merico, Inc. for a directed verdict was allowed, and no appeal was taken therefrom. Appropriate issues to determine the liability, if any, of Harris-Teeter Super Markets, Inc. to plaintiff were submitted to the jury and answered as follows:

> "1. Did the plaintiff and Harris-Teeter contract and agree that if Harris-Teeter terminated the contract, that Harris-Teeter would take and pay for packaging materials as of date of termination?

> ANSWER: No.

> \*   \*   \*   \*

> 5. Did the defendant Harris-Teeter fail to give the plaintiff reasonable notice of its intention to terminate the contract?

> ANSWER: No."

From judgment on the verdict that plaintiff recover nothing from Harris-Teeter Super Markets, Inc., plaintiff appealed to the Court of Appeals. That court found no error, and we allowed certiorari to review the decision.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston by Gaston H. Gage, for the plaintiff appellant.*

*R. C. Carmichael, Jr. of the firm Wade and Carmichael, for Harris-Teeter Super Markets, Inc., defendant appellee.*

HUSKINS, Justice.

All assignments of error brought forward in plaintiff's brief to this Court relate to alleged errors in the trial court's

instructions to the jury. Other assignments not properly presented and argued are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810 (1961).

[3] In assignments one, two and three, plaintiff contends the trial court charged on matters unsupported by the evidence. In the instructions challenged by these assignments, the trial judge charged that the evidence would permit the jury to find any one of three factual variations to constitute the agreement between plaintiff and Harris-Teeter. He told the jury that if it found that Harris-Teeter did not agree to take and pay for the packaging materials upon termination, it could find from the evidence that (1) Harris-Teeter agreed to pay for the packaging materials only if the materials were used by Harris-Teeter or by the new supplier (Merico) for Harris-Teeter's benefit (Plaintiff's Exception No. 1), or (2) Harris-Teeter agreed to do what was necessary to have the packaging materials released to its new supplier (Plaintiff's Exception No. 2), or (3) Harris-Teeter and plaintiff agreed that, upon request from Harris-Teeter, plaintiff would release the packaging materials to the new supplier and the new supplier would pay for the packaging materials (Plaintiff's Exception No. 3).

Plaintiff did not object to these instructions at the trial but now takes exception to them and assigns same as error. Plaintiff argues that Harris-Teeter neither alleged nor offered evidence to prove an agreement between the parties conforming to any of the alternatives above set out.

[1] The Court of Appeals declined to pass upon plaintiff's first three assignments based on Exceptions 1, 2 and 3 on the ground that all of the evidence was not sent up, citing *Atwell v. Shook,* 133 N.C. 387, 45 S.E. 777 (1903). Plaintiff asserts in this connection that the appellate courts are bound by the agreement of the parties that the record on appeal contains "the necessary and relevant portions of the record and case on appeal needed to explain the exceptions and errors assigned." Plaintiff therefore argues that the decision of the Court of Appeals violates Rule 19(5) of the Rules of Practice in the Supreme Court which is intended to discourage the printing of irrelevant and unnecessary matter on appeal.

*Atwell v. Shook, supra,* is distinguishable from the present case in that the record there did not contain a stipulation between counsel, as here, that the record on appeal contains "the

necessary and relevant portions of the record and case on appeal needed to explain the exceptions and errors assigned." The record as certified imports verity and we are bound thereby. *Rogers v. Rogers,* 265 N.C. 386, 144 S.E. 2d 48 (1965) ; *Redden v. Bynum,* 256 N.C. 351, 123 S.E. 2d 734 (1962) ; *Griffin v. Barnes,* 242 N.C. 306, 87 S.E. 2d 560 (1955).

[2] In addition, the record in *Atwell v. Shook* contained a statement indicating that other *relevant* evidence had been omitted from the record on appeal, and for that reason the Court declined to pass on appellant's exception based on the alleged lack of evidence to support the court's instructions. We find nothing in this record to indicate that omitted testimony *was relevant to the questions posed* for determination. When the decision in *Atwell v. Shook* is read aright, it does not require that *all* the evidence in a case accompany an exception based on the insufficiency of the evidence to support an instruction to the jury. Only evidence *toward which an instruction is directed* must be included in the record on appeal. *Shepherd v. Dollar,* 229 N.C. 736, 51 S.E. 2d 311 (1949) ; *see Brown v. Telegraph Company,* 198 N.C. 771, 153 S.E. 457 (1930) ; *Felmet v. Express Co.,* 123 N.C. 499, 31 S.E. 722 (1898) ; *James v. R. R.,* 121 N.C. 530, 28 S.E. 537 (1897). For these reasons *Atwell v. Shook,* while obliquely applicable, is not controlling on the facts and circumstances of this case.

We now turn to appellant's contention on the merits of assignments one, two and three that the evidence was insufficient to support the trial court's instructions.

When charging the jury in a civil action the trial judge shall declare and explain the law arising on the evidence. G.S. 1A-1, Rule 51 (1969) ; *Link v. Link,* 278 N.C. 181, 179 S.E. 2d 697 (1971). He must relate and apply the law to variant factual situations presented by some reasonable view of the evidence. *Correll v. Gaskins,* 263 N.C. 212, 139 S.E. 2d 202 (1964) ; *Westmoreland v. Gregory,* 255 N.C. 172, 120 S.E. 2d 523 (1961) ; *Worley v. Motor Co.,* 246 N.C. 677, 100 S.E. 2d 70 (1957). "When the evidence is susceptible of several interpretations a failure to give instructions which declare and explain the law in its application to the several phases of the evidence is held for reversible error." *Williams v. Coach Co.,* 197 N.C. 12, 147 S.E. 435 (1929). Conversely, an instruction relating to a factual situation not properly supported by the evidence is also erroneous. *Dennis v. Voncannon,* 272 N.C. 446, 158 S.E. 2d 489 (1968) ;

*Dove v. Cain,* 267 N.C. 645, 148 S.E. 2d 611 (1966) ; *Powell v. Clark,* 255 N.C. 707, 122 S.E. 2d 706 (1961).

Applying the foregoing principles to assignments one, two and three, we hold that the court's instructions are properly supported by the evidence in the record. Plaintiff alleges that Harris-Teeter terminated, without reasonable notice, an agreement under which Harris-Teeter was obligated to take labels and materials manufactured for Harris-Teeter and pay plaintiff for them. To support the allegation plaintiff offered the testimony of D. H. Meenach, President of Superior Foods, Inc. He testified that in 1968 he met several times with Mr. Williams, the head buyer, and Mr. Harris, the President of Harris-Teeter. They discussed the normal procedure of the biscuit business and were in agreement as to "what happens if one side quits," including who pays for cylinder costs, private labels and other details. On cross-examination Mr. Meenach said the officials of Harris-Teeter told him "we will pay for any unfinished packaging materials."

Mr. Meenach further testified as to the usual practice of the trade concerning labels and packaging materials on hand after termination of a contract by the retailer. He stated on cross-examination:

" . . . [T]he custom of the trade has been, and is now, that the retailer would write a letter to the present supplier telling him that he was being discontinued and usually with a notice, minimum of 15 days, usually more than that, usually 30 days, but minimum of 15 days, and then he was to release these labels to the new supplier. The custom of the trade was that the new supplier calls the old supplier to make arrangements with regards to the cans and labels, because there is [sic] other costs involved of packaging. . . . The custom of the trade would have been for Merico and Superior Foods to make arrangements with ClevePak to have at least those cans and labels which were on inventory at ClevePak released to the new man, Merico. . . . [Cleve-Pak] couldn't release them unless Superior Foods give [sic] him the authorization. . . . But the contact comes direct from Merico to Superior, not through ClevePak. The contact goes from Merico to Superior Foods. . . . What we are talking about mainly is custom of the trade. . . . And the implicity [sic] in that would be, as released, they would be

paid for by Merico and charged back to the ultimate customer [Harris-Teeter] some way or another."

Mr. Meenach also stated that, insofar as the circumstances were in its control, Harris-Teeter had done everything it agreed to do upon changing suppliers "with exception to seeing that we actually got paid for the labels that had their name on it." Referring to a meeting he had with Mr. Thomas, biscuit purchaser for Harris-Teeter, following termination of the agreement, he said:

> "Mr. Thomas told us that he believed Harris-Teeter's obligations ceased when the letter that he had written requesting to release material and taking the finished product on hand. . . . Mr. Thomas expressed a willingness to sit down with Superior and other parties on a further discussion of the problem, but said he would not take any position because he felt he had handled his problem. . . . "

[3]   The testimony of Mr. Meenach is ambiguous, and we think it is susceptible to the several interpretations given it by the trial court. In addition to plaintiff's allegation and evidence that Harris-Teeter expressly agreed to pay for the packaging materials, another permissible view of the testimony is that Harris-Teeter denied any contractual liability to Superior or Merico for the packaging materials after its letter of 2 July 1971 which confirmed termination of the contract *and requested Superior to make all packaging materials available to Merico*. If Harris-Teeter did not agree to pay for the packaging materials, but did agree to follow the normal practice in the biscuit business, it would have incurred subsequent liability for the packaging materials only when plaintiff complied with its request by releasing the materials to Merico according to trade practice and Merico used the materials thus received for Harris-Teeter's benefit. Such a view of the evidence supports that portion of the charge to which Exception No. 1 is directed.

Another permissible view of the evidence is that Harris-Teeter considered itself obligated to request plaintiff to release the packaging materials to Merico and, if necessary, to act as mediator between plaintiff and Merico. This interpretation supports the portion of the charge represented by appellant's Exception No. 2.

A third permissible view of the evidence is that Harris-Teeter and plaintiff had agreed that, upon termination of the

contract by either party, plaintiff would release the packaging materials upon Harris-Teeter's request, and that Harris-Teeter had fulfilled its obligations by so requesting in its termination letter to plaintiff on 2 July 1971. This interpretation supports the portion of the charge to which Exception No. 3 refers.

Pursuant to plaintiff's allegations and evidence, the trial judge instructed the jury with respect to reasonable notice of termination, the agreement to pay for leftover packaging materials allegedly made by Harris-Teeter, and the several permissible interpretations of the evidence challenged in these assignments. The jury answered the issues in favor of Harris-Teeter, and we find no reasonable cause to believe that the jury was misled or misinformed as alleged by plaintiff. *Lewis v. Barnhill*, 267 N.C. 457, 148 S.E. 2d 536 (1966) ; *Finance Co. v. Trust Co.*, 214 N.C. 478, 199 S.E. 733 (1938) ; 7 Strong, N. C. Index 2d, Trial § 33 (1968). Therefore, assignments one, two and three are overruled.

[4]    In assignments five and fifteen plaintiff contends the trial court erred in its charge to the jury with respect to the termination of contracts. Plaintiff says the court failed to instruct the jury that a contract terminable at will, as here, cannot be terminated by one party after the other party has performed acts thereunder which entitled him to compensation. In support of this contention plaintiff cites *White v. Pleasants,* 225 N.C. 760, 36 S.E. 2d 227 (1945). We note at the outset, however, that the case cited and relied on is distinguishable in that it deals with *revocation* of a simple contract of agency after performance by one party, while the case before us deals with *termination* of an agreement for the sale of goods in which no terminal date is specified and which, therefore, is governed by the Uniform Commercial Code. G.S. 25-2-309(2) and (3) (1965).

G.S. 25-2-309(2) provides that where a contract calls for successive performances it is valid for a reasonable time and, thereafter, may be terminated *at any time* by either party unless otherwise agreed. *See Fulghum v. Selma,* 238 N.C. 100, 76 S.E. 2d 368 (1953). Termination of a contract occurs when either party, pursuant to a power created by agreement or law, puts an end to the contract otherwise than for its breach; and when terminated, all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives. G.S. 25-2-106(3) (1965).

G.S. 25-2-309 (3) provides, *inter alia,* that termination of a contract by one party, except on the happening of an agreed event, requires that reasonable notification be received by the other party. Comment 8 to this section explains the reasonable notification requirement: "Subsection (3) recognizes that the application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute arrangement." Among merchants under Article two of the Code, good faith means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. G.S. 25-2-103 (b) (1965). Reasonable time depends on the nature, purpose and circumstances of the action to be performed within a reasonable time. G.S. 25-1-204 (2) (1965) ; *see Rubber Co. v. Distributors,* 253 N.C. 459, 117 S.E. 2d 479 (1960).

When these statutory principles are applied to the facts and circumstances of this case, we find no error in this phase of the trial. Here, plaintiff has not proceeded on a theory in allegation or proof that it suffered damages because the notice of termination from Harris-Teeter did not provide adequate time to seek a substitute arrangement. Instead, the theory of recovery which plaintiff has presented on appeal is based on the contention that its losses on the leftover packaging materials were in some way caused by an alleged wrongful termination of the contract and the alleged failure to give reasonable notice, and that Harris-Teeter is responsible and liable for those losses. Stated a different way, plaintiff seems to contend that had Harris-Teeter not terminated the contract or had it given longer notice of termination, Superior would not have suffered losses on the leftover packaging materials. A review of the evidence shows that the trial judge adequately applied the law to the evidence plaintiff offered in support of its theory of recovery.

In addition to testimony heretofore related, Mr. Meenach further testified:

> "The history of this trade is that it is quite competitive. And the changing of suppliers happens frequently. This happens to everybody in the business and to the best of people, I might say. We took business from Merico and they, in turn, have taken business from us. And the same things is true with other suppliers. I got this business in 1968 [from Merico] and held onto it for a little better than three years.

And I got a telephone call on July 2, 1971 from Mr. Watson. And he told me over the telephone that they were changing suppliers. You discuss that there is a possibility of losing the business back in the originating of the contract and what happens if this does happen. It's always a possibility. When we made the initial agreement, we anticipated that what did in fact happen, could happen."

On 2 July 1971 Harris-Teeter wrote Superior Foods as follows:

"1. Harris-Teeter will terminate all agreements for manufacturing of dough products with Superior Foods as of this date.

2. We are requesting that all packaging materials on hand be made available to Merico.

We will appreciate the packaging supplies being made available with expediency."

According to the record before us, plaintiff *remained silent and did nothing* until 1 October 1971 when it wrote Harris-Teeter complaining that the contract had been discontinued without notice "and consequentially we have a considerable amount of labels and cans on hand." Meanwhile, Harris-Teeter bought and paid Superior for all the Harris-Teeter labeled canned biscuits Superior had on hand at the time of termination, and Merico somehow improvised alternate labels until it obtained an adequate supply of packaging materials, labels and cans from other sources. Mr. Meenach's testimony also shows that Harris-Teeter redesigned its biscuit label during the July 1-October 1 period. Obviously the old labels were useless thereafter, and it is understandable why Harris-Teeter and Merico were not interested in paying for the leftover supplies on October 1!

Mr. Meenach stated that the custom in the trade is "for the new supplier to contact the old supplier to find out what [the] terms and conditions are. . . . [I]n most instances . . . the new supplier is most anxious to contact the old supplier because he needs labels badly. . . . " On the basis of this alleged "custom in the trade," plaintiff contends that Merico was obligated to come to it and ask it to release the packaging materials, and that until such contact came from Merico it was in no way obligated to follow up Harris-Teeter's request that the packaging materials be made available to Merico.

There is no evidence whatsoever in this record that Merico would have been unwilling to take and pay for the leftover packaging materials had plaintiff merely informed Merico of their availability. If plaintiff had merely taken this initiative, all consequences of the termination for which it seeks compensation probably would have been avoided. But be that as it may, counsel for plaintiff conceded on oral argument, and the record bears it out, that the whole process normally followed in the canned biscuit trade for transferring leftover packaging materials to a new supplier broke down when plaintiff failed to act on Harris-Teeter's letter because it thought the "custom of the trade" required Merico to contact it first.

We have carefully considered the charge. The court's instructions on termination and reasonable notice, although not couched in the exact terminology of the Uniform Commercial Code, are in substantial accord with the law. With these instructions the court properly submitted issues concerning Harris-Teeter's obligations on termination of the contract, and the jury rejected plaintiff's contentions (1) that Harris-Teeter had expressly agreed to pay for the labels and packaging materials and (2) that Harris-Teeter failed to give reasonable notice of termination.

The first issue submitted encompasses plaintiff's claim that Harris-Teeter was liable for plaintiff's *prior performance* in acquiring the packaging materials which were left on hand upon termination of the contract. All obligations based on *prior performance* of a contract survive its termination, G.S. 25-2-106 (3) ; and *if* the jury had found that Harris-Teeter agreed to pay for leftover packaging materials, Harris-Teeter would be liable for costs incurred by plaintiff in acquiring the materials. However, the contrary finding negates Harris-Teeter's liability based on performance under the contract. Implicit in the jury's finding on the first issue is that Harris-Teeter only agreed to pay for the finished product. According to the practice in the trade contemplated by the parties, the leftover packaging materials should have been transferred to Merico, and Merico should have paid for them. Harris-Teeter fulfilled its obligation when it took and paid for all the finished product plaintiff had on hand at the time of termination.

The fifth issue submitted and the court's instruction thereon adequately present plaintiff's contention that Harris-Teeter failed to give reasonable notice of termination. The jury finding

establishes that Harris-Teeter gave reasonable notice and that Harris-Teeter was not liable for any damages allegedly suffered from lack of fifteen to thirty days' notice of termination. The letter of termination gave plaintiff sufficient opportunity to dispose of the leftover packaging materials according to the practice in the trade. Plaintiff knew that time was an essential factor in making leftover packaging materials available to the new supplier, yet it failed to contact Merico or notify Harris-Teeter that Merico had not made the initial contact. In that factual setting, it was permissible for the jury to find that the notice was reasonable in that it gave plaintiff fair opportunity to follow the trade practice for avoiding the losses. The parties had apparently agreed to follow that procedure for handling the leftover materials regardless of the length of notice. If plaintiff has suffered any loss in this case, the loss is not due to lack of notice but to its own failure and neglect to make the packaging materials on hand available to Merico, the new supplier. Assignments five and fifteen are therefore overruled.

In assignments six, seven and nine, plaintiff assigns as error the failure of the trial court to instruct the jury on statutory rules relating to usage of trade under G.S. 25-1-205(2), (3) and (5). Plaintiff requested no such instructions at trial and contends no request was required since "usage of trade" is a substantial feature of the case.

**[5]** Plaintiff had the right, unless waived, to have the jury determine all issues of fact arising from the evidence. N. C. Const., Art. IV, §§ 13 and 14; *Brewer v. Harris*, 279 N.C. 288, 182 S.E. 2d 345 (1971). In that connection, Rule 49(c) of the Rules of Civil Procedure reads as follows:

"(c) *Waiver of jury trial on issue.*—If, in submitting the issues to the jury, the judge omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the judge may make a finding; or, if he fails to do so, he shall be deemed to have made a finding in accord with the judgment entered."

Thus, the right to have an issue of fact determined by the jury is waived unless a party demands its submission before the jury retires. *Johnson v. Massengill*, 280 N.C. 376, 186 S.E. 2d 168

(1972). The reason for the rule is explained in the following Comment:

> "The idea is that the inadvertent omission of an issue ought not to jeopardize a whole trial when an impartial fact finder is on hand to make the requisite finding. Ample means for a party to protect his right to jury trial on all issues are clearly available. All he has to do is demand their submission 'before the jury retires.'" Comment, G.S. 1A-1, Rule 49 (1969).

[6, 7] G.S. 25-1-205 (2) defines usage of trade as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." Ordinarily, the existence and the scope of a usage of trade are questions of fact to be determined by the fact finder. When, however, it is established that a usage of trade is embodied in a written code or similar writing, the interpretation of the writing becomes a question of law for the court. G.S. 25-1-205 (2) (1965); *See* 1 Anderson, Uniform Commercial Code § 1-205:6 (1970). Here, the alleged usage of trade is not in writing. The question of its existence was not submitted to the jury as an issue of fact, and plaintiff made no demand for its submission before the jury retired. Since the trial judge himself made no finding on the issue, he is "deemed to have made a finding in accord with the judgment entered." G.S. 1A-1, Rule 49 (c) (1969). In that factual setting, plaintiff has waived its right to have the issue determined by the jury. It necessarily follows that the trial judge was not required to instruct the jury on the relevant law.

Issues relating to usage of trade, like other factual issues, should be prepared by the attorneys appearing in the action, or by the presiding judge, and reduced to writing before or during the trial. G.S. 1A-1, Rule 49 (b) (1969). Formulation of such a factual issue after trial comes too late and does not entitle a party to a new trial on that issue. Assignments six, seven and nine are overruled.

In assignment ten plaintiff alleges error in the failure of the trial court to instruct the jury concerning anticipatory repudiation under G.S. 25-2-610 (1965). That section of the Uniform Commercial Code deals with repudiation of a contract with respect to a performance not yet due. It is not applicable to this

case. Here, Harris-Teeter had a right to terminate the contract. Assignment ten is overruled.

Assignment twenty-three and plaintiff's argument on *quantum meruit*, which is not represented by an assignment of error, were not preserved and discussed in plaintiff's brief in the Court of Appeals. These matters are therefore not properly before us. *Peaseley v. Coke Co.*, 282 N.C. 585, 194 S.E. 2d 133 (1973); *State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353 (1968).

It is unnecessary to discuss other assignments relating to plaintiff's remedies allegedly available under the Uniform Commercial Code. The determinative issues have been answered by the jury in favor of defendant. The jury determined that Harris-Teeter was not obligated to pay for the labels and packaging materials. Thus, assignments relating to remedies allegedly available under the Code become moot and need not be considered on appeal. *Welch v. Jenkins*, 271 N.C. 138, 155 S.E. 2d 763 (1967); *Perry v. Doub*, 249 N.C. 322, 106 S.E. 2d 582 (1959).

For the reasons stated the decision of the Court of Appeals upholding the verdict and judgment in favor of the defendant Harris-Teeter Super Markets, Inc., is

Affirmed.