LA NOTTE, INC. v. NEW WAY GOURMET, INC., AND W. B. DIXON, III, AND WIFE, KITTY DIXON, INDIVIDUALLY v. GIAVONNE GIANONNE

No. 8621SC347

(Filed 16 December 1986)

1. Cancellation and Rescission of Instruments § 9— rescission of contract by restaurant—lease assignment not executed—credibility of parties

In an action to recover damages for breach of contract to purchase a restaurant, the trial court properly denied defendants' motion for a directed verdict on their counterclaim for rescission where the agreement executed by the parties required the parties to cooperate in obtaining the assignment of the lease, the evidence tended to show that one defendant had refused to execute a document assigning the lease, and that defendant testified that his attorney had advised him not to sign the document because it contained errors. The credibility of the evidence presented a question for the jury.

La Notte, Inc. v. New Way Gourmet, Inc.

**2. Appeal and Error § 31.1— no objection to instructions—no appellate review**

No question was presented for appellate review regarding the court's instructions on burden of proof where defendants failed to object to the instructions. N.C. Rules of App. Procedure, Rule 10(b)(2).

**3. Unfair Competition § 1— breach of contract—evidence sufficient**

The evidence presented at trial in an action for breach of contract to purchase a restaurant raised the issue of unfair or deceptive trade practices in violation of N.C.G.S. § 75-1.1 where John Giannone assured W. B. Dixon that the gross income of the restaurant was $13,000 per month, except in November and December, when the gross income was $26,000 per month; W. B. Dixon was not permitted to see the books because the records were combined with those of another restaurant; Giannone did not provide the books, records and files at closing, as required by the purchase agreement; W. B. Dixon testified that he was assured by Giannone and his wife that he could reasonably expect to make a profit and that he trusted Giannone; the actual gross sales of the restaurant from November 1982 through December 1983 had ranged from $5,743 to $7,222 per month; and the average gross income after defendants began to operate the restaurant in November 1983 was $7,000 per month.

Judge COZORT concurs in part and dissents in part.

APPEAL by defendants New Way Gourmet, Inc., and W. B. Dixon, III, from *Mills, Judge.* Judgment entered 3 October 1985 in Superior Court, FORSYTH County. Heard in the Court of Appeals 10 November 1986.

This is a civil action wherein plaintiff seeks to recover damages for beach of contract to purchase a restaurant. In its complaint filed 30 March 1984, plaintiff alleged that defendants agreed to purchase the assets of a restaurant located in Hanes Mall in Winston-Salem, but had failed to make the monthly payments pursuant to a promissory note which defendants had executed to secure repayment of a portion of the purchase price. In their answer defendants denied that they had failed to make payments pursuant to the promissory note and filed a counterclaim against plaintiff and Giavonne (John) Giannone, the sole shareholder of plaintiff corporation, seeking rescission of the contract. In support of the counterclaim, defendants alleged that they had been fraudulently induced to purchase the restaurant and that the lease to the restaurant had not been assigned to defendants as required by the contract. They also alleged that Giannone had misrepresented the earnings of the restaurant, and this conduct constituted an unfair or deceptive trade practice. In their reply to the counterclaim, plaintiff and John Giannone denied the

allegations of fraud and alleged that the lease had not been assigned because defendants had failed to cooperate in obtaining the assignment. Plaintiff also filed a supplemental complaint seeking to recover damages for unjust enrichment, alleging that defendants had discontinued rent payments to the restaurant's landlord and that plaintiff had paid the rent in the amount of $8,798.09. Defendants did not file an answer to this supplemental complaint.

At trial an "asset purchase agreement" executed by the parties was introduced into evidence. The agreement provided that defendant W. B. Dixon would purchase from plaintiff the assets of a restaurant known as Antonella's for the purchase price of $68,000. The agreement provided that the purchase price was to be paid as follows: $1,000 earnest money was to be deposited with Renn Drum, an attorney; $39,000 was to be paid in cash, and the remaining $28,000 was to be paid in sixty payments of $541.32 pursuant to a promissory note. The agreement also contained the following provision:

> *Consents to Assignments.* Purchaser shall receive from the landlord of Hanes Mall written consents to the assignment of the lease. Buyer and seller shall cooperate to secure said assignment. If no consent to assignment [within] 6 months, then, contract shall be rescinded [and] all money paid seller by buyer shall be refunded.

Uncontroverted evidence in the record shows that the lease was not assigned to defendants within six months of the execution of the contract.

Plaintiff and John Giannone introduced evidence tending to show that defendants made only two payments pursuant to the promissory note and had discontinued payment of rent to the landlord, requiring plaintiffs to pay rent for the restaurant for two months and one week. They also introduced evidence tending to show that defendants' attorney had in his possession a document providing for the assignment of the lease, but that defendants had never signed it.

Defendants introduced evidence tending to show that John Giannone had misrepresented the restaurant's earnings prior to the sale and that after the sale the profits were much lower than

defendants had expected. W. B. Dixon testified that he did not sign the document providing for assignment of the lease because his attorney informed him that the document contained errors.

Issues were submitted to the jury and were answered as follows:

1. Was William B. Dixon, III induced to execute the asset purchase agreement dated October 10, 1983 by fraudulent representations of John Giannone?

ANSWER: No

2. Did William B. Dixon, III cooperate in such a manner as to secure the assignment of the lease?

ANSWER: No

3. What amount, if any, is the defendant, William B. Dixon, III, entitled to recover form the plaintiff, John Giannone?

ANSWER: $ — 0 —

4. Is the plaintiff, John Giannone entitled to recover rent paid to Hanes Mall for the months of March, April and seven days in May?

ANSWER: Yes

5. If so, what amount, if any, is John Giannone entitled to recover from the defendant, William B. Dixon, III?

ANSWER: $6775.00

From a judgment ordering defendants New Way Gourmet, Inc., and W. B. Dixon, III, to pay plaintiff $6,775.00 plus interest and directing a verdict for defendant Kitty Dixon on all counts, defendants New Way Gourmet, Inc., and W. B. Dixon, III, appealed.

*Alexander, Wright & Parrish, by Robert D. Hinshaw, for plaintiff, appellee.*

*Lawrence J. Fine and David B. Hough for defendants, appellants.*

HEDRICK, Chief Judge.

[1]  Defendants first contend that the trial court erred in denying their motion for directed verdict on their counterclaim for rescis-

sion. Defendants argue that they were entitled to a rescission of the contract because all of the evidence shows that the lease was not assigned within six months of the execution of the contract. Defendants further contend that the record contains no evidence that they failed to cooperate to secure the lease assignment. We disagree.

Directed verdicts for the party with the burden of proof are rarely granted, because there will ordinarily remain in issue the credibility of the evidence. *Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). Defendants in the present case had the burden of proof on their counterclaim for rescission. *See, Wells v. Clayton*, 236 N.C. 102, 72 S.E. 2d 16 (1952). The agreement executed by the parties in the present case provides that their contract would be rescinded if the lease to the restaurant was not assigned to defendant within six months, and the evidence tending to show that the lease was not assigned within the designated period of time is uncontroverted. The agreement also contains, however, a provision requiring the parties to cooperate in obtaining the assignment of the lease. The evidence tending to show that defendant W. B. Dixon refused to execute a document assigning the lease would support a finding by the jury that defendants had failed to cooperate. Although defendant W. B. Dixon testified that his attorney advised him not to sign the document because it contained errors, the credibility of this evidence presents a question for the jury. Therefore, the trial court properly denied defendants' motion for directed verdict on their counterclaim for rescission.

[2]  By their second assignment of error, defendants contend that the trial court erred in instructing the jury that W. B. Dixon had the burden of proving that he cooperated in obtaining the lease assignment. The record before us discloses that defendants failed to object to this instruction. Thus, this assignment of error presents no question for review. Rule 10(b)(2), N.C. Rules App. Proc.

[3]  By their final assignment of error, defendants contend that the trial court erred in refusing to submit to the jury "the factual issues necessary for a judicial conclusion that the plaintiff and third party defendant had engaged in unfair and deceptive trade practices." Defendants argue that the evidence presented at trial raised the issue of unfair or deceptive trade practices, in violation of G.S. 75-1.1, in addition to the issue of fraud. We agree.

It is the duty of the trial judge to submit to the jury issues which are raised by the evidence, and which, when answered, will resolve all material controversies between the parties. G.S. 1A-1, Rule 49; *Wooten v. Nationwide Mutual Ins. Co.*, 60 N.C. App. 268, 298 S.E. 2d 727, *disc. rev. denied*, 308 N.C. 392, 302 S.E. 2d 258 (1983). In cases under G.S. 75-1.1 and G.S. 75-16, it is ordinarily for the jury to determine the facts, and based on the jury's findings, the court must then determine as a matter of law whether the defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce. *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). Proof of fraud would necessarily constitute an unfair or deceptive act or practice; however, the converse is not always true. *Id.*

In *Marshall v. Miller*, 302 N.C. 539, 543-44, 276 S.E. 2d 397, 400 (1981), our Supreme Court discussed the intent of the legislature in enacting G.S. 75-16, which provides for civil actions by persons injured by unfair or deceptive trade practices in violation of G.S. 75-1.1, as follows:

> Such legislation was needed because common law remedies had proved often ineffective. Tort actions for deceit in cases of misrepresentation involved proof of scienter as an essential element and were subject to the defense of "puffing." . . . Proof of actionable fraud involved a heavy burden of proof, including a showing of intent to deceive.

(Citations omitted.) The Court in *Marshall* also discussed the type of conduct prohibited by G.S. 75-1.1:

> Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. . . . A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . . [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required.

*Id.* at 548, 276 S.E. 2d at 403. (Citations omitted.) Good faith is not a defense to an alleged violation of G.S. 75-1.1. *Id.*

In the present case, defendants introduced evidence tending to show the following: John Giannone assured W. B. Dixon that

the gross income of the restaurant was $13,000 per month, except in November and December, when the gross income was $26,000 per month. W. B. Dixon was not permitted to see the restaurants' books because the records of Antonella's were combined with the records of another restaurant owned by Giannone. Giannone did not provide him with the books, records and files of the restaurant at closing, as required by the asset purchase agreement. W. B. Dixon testified that he was assured by Giannone and his wife that he "could reasonably expect with prudent business operation to make a profit from this restaurant." He further testified that he trusted John Giannone. Defendants also introduced evidence tending to show that the actual gross sales of the restaurant from November 1982 through September of 1983 had ranged from $5,743.00 to $7,222.00 per month and that after defendants began to operate the restaurant in November 1983, the restaurant's average gross income was $7,000 per month. This evidence would support findings by the jury from which the trial court could conclude that plaintiff and third-party defendant engaged in trade practices which were unfair or deceptive in violation of G.S. 75-1.1.

For the foregoing reasons we remand the case for a new trial on defendants' third counterclaim alleging that plaintiff's conduct amounted to unfair or deceptive trade practices. In the trial of the remaining issues, we find no error.

No error in part; remanded for new trial in part.

Judge MARTIN concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT concurs in part and dissents in part.

I dissent with the portion of the majority opinion granting a new trial for defendants on the issue of the defendants' counterclaim and third party claim for unfair and deceptive trade practices. In my opinion the defendants waived the right to have certain factual issues determined by the jury because they failed to properly demand their submission to the jury. In *Superior Foods, Inc. v. Harris-Teeter Super Markets, Inc., and Merico, Inc.*, 288 N.C. 213, 217 S.E. 2d 566 (1975), the Supreme Court held that,

"the right to have an issue of fact determined by the jury is waived unless a party demands its submission before the jury retires." *Id.* at 225, 217 S.E. 2d at 575. At the issue conference below, attorney for defendants asked the trial court to submit to the jury the issue of whether plaintiff and the third-party defendant committed an unfair trade practice. The defendants were not entitled to have that issue submitted to the jury because that issue is a matter of law to be determined by the trial court after the jury answers appropriate factual issues. The trial court below failed to submit the appropriate factual issues which arose from the evidence. Defendants did *not* request the submission of the appropriate factual issues, and, by failing to make such a demand or request, have waived the right to have them submitted. *See* G.S. 1A-1, Rule 49(c), and *Wright v. American General Life Insurance Company*, 59 N.C. App. 591, 599-600, 297 S.E. 2d 910, 915-16 (1982), *disc. rev. denied*, 307 N.C. 583, 299 S.E. 2d 653 (1983).

I vote no error.