GATX LOGISTICS, INC., Plaintiff v. LOWE'S COMPANIES, INC., Defendant

No. COA00-53

(Filed 5 June 2001)

1. **Contracts— notice of claim—reasonable time—summary judgment improper**

The trial court erred by granting summary judgment in favor of plaintiff on the issues of whether defendant notified plaintiff of its contract claim under a warehouse agreement where plaintiff stored items relating to defendant's trim-a-tree program, and whether defendant timely brought the subject action, because: (1) the conduct of the parties in making the 1996 agreement cannot be used to explain the term "a reasonable time" under the 1995 agreement; (2) a 29 February 1995 warehousing kerosene contract between the parties did not establish a course of dealing for understanding the 1995 trim-a-tree agreement; (3) even if the

provisions of the 1996 agreement presented evidence of usage of trade, the Uniform Commercial Code explicitly sets forth that the parties' course of dealing controls over usage of trade, N.C.G.S. § 25-1-205(4); and (4) since the 1995 agreement between the parties did not call for repeated occasions for performance by either party, it does not establish a course of performance relevant to determining the meaning of the 1995 trim-a-tree agreement.

**2. Unfair Trade Practices— mere breach of contract—summary judgment proper**

The trial court did not err by granting summary judgment in favor of plaintiff on defendant's counterclaim for unfair and deceptive trade practices, because: (1) a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1; and (2) defendant did not allege substantial aggravating circumstances attendant to the breach of contract.

Appeal by defendant from orders respectively entered 2 and 9 August 1999 by Judges Michael E. Helms and Larry G. Ford in Superior Court, Forsyth County. Heard in the Court of Appeals 14 February 2001.

*McEllwee, P.L.L.C., by Christopher D. Lane and Elizabeth K. Mahan for defendant-appellant.*

*Little & Little, by Cathryn M. Little for plaintiff-appellee.*

WYNN, Judge.

In this appeal, the defendant Lowe's Companies, Inc. argues that factual issues exist as to whether it notified plaintiff GATX Logistics, Inc. of its contract claim, and whether it timely brought the subject action. We agree and therefore reverse the trial court's grant of summary judgment. *See Superior Foods, Inc. v. Harris Teeter Super Markets, Inc.*, 288 N.C. 213, 217 S.E.2d 566 (1975).

Lowe's secondly argues that issues of fact exist on its unfair and deceptive trade practice claims. We disagree because Lowe's evidence at best shows a mere breach of contract which is not sufficient to sustain an action under N.C. Gen. Stat. § 75-1.1. *See Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.*, 124 N.C. App. 383, 390, 477 S.E.2d 262, 266 (1996).

GATX LOGISTICS, INC. v. LOWE'S COS.

[143 N.C. App. 695 (2001)]

The facts show that under a warehouse agreement, GATX agreed to store items related to the Lowe's trim-a-tree program. Lowe's estimated the total value of the inventory under the program as $38,000,000. The parties acknowledge a dispute over the 1995 agreement concerning the notice of claim section. In its complaint, GATX alleges that the following version of that section applies:

NOTICE OF CLAIM—Section 14

(a) Claims by a Client . . . must be presented in writing to Warehouseman within a reasonable time and in no event longer than either 60 days after delivery of the goods by Warehouseman, or 60 days after Client of record or the last known holder of a negotiable warehouse receipt is notified by Warehouseman that loss or injury to the goods has incurred [sic], whichever time is shorter.

(b) No action may be maintained by Client . . . against Warehouseman for loss or injury to the goods stored unless timely written claim has been given as provided in paragraph (a) of this section unless such an action is commenced either within 12 months after date of delivery by Warehouseman, or within nine months after Client of record or the last known holder of a negotiable warehouse receipt is notified that loss or injury to part or all of the goods have occurred, whichever time is shorter.

In its answer and counterclaim, Lowe's alleges that before signing the contract, it modified these sections by striking through the language regarding when to present a claim or to file an action and leaving the phrase "within a reasonable time."

The written agreement provided an allowable inventory shrinkage of 0.2% of shipments due to inventory loss or damage. From about 26 June 1995 to 5 November 1996, Lowe's shipped products to the GATX warehouses under the 1995 agreement. On 17 January 1996, Lowe's prepared an inventory shrinkage report that estimated its losses under the trim-a-tree program to be $354,457. Subsequently, Lowe's Inventory Control department completed the final analysis of the 1995 trim-a-tree program and found the final inventory losses to be $155,995. Nonetheless, on 13 December 1996, Lowe's notified GATX its claim was for $303,949 ($354,457 less the contracted 0.2% shrinkage allowance).

In the meantime, in April 1996, the parties negotiated a second public warehousing agreement that contained the following limita-

tions: Claims must be presented in writing no longer than ninety days after delivery of the goods to the warehouseman; and, no action shall be maintained against warehouseman for loss or injury to the goods unless such action is commenced within twelve months after date of delivery by warehouseman.

On 8 June 1998, Lowe's brought an action against GATX in Wilkes County. However, on 7 August 1998, GATX brought a declaratory judgment in Forsyth County seeking a declaration of its rights under the 1995 warehousing agreement with Lowe's. Ultimately, the trial court dismissed Lowe's Wilkes County action under North Carolina Rules of Civil Procedure 12 (b) (2), (4), (5) and 12 (h) on the grounds that Lowe's had improperly named GATX. Thereafter, Lowe's filed a counterclaim against GATX, seeking to recover damages for breach of contract, unfair and deceptive trade practice, fraud, conversion, and negligence. Following a summary judgment motion hearing, Superior Court Judge Larry G. Ford granted partial summary judgment for GATX on Lowe's unfair and deceptive trade practice claim and denied summary judgment for Lowe's claims of breach of contract, fraud, conversion and negligence. On 2 August 1999, Superior Court Judge Michael E. Helms granted GATX's motion for summary judgment on the declaratory judgment thereby rendering Lowe's counterclaims moot. Lowe's appeals from both orders granting summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999). In reviewing a trial court's order, the evidence must be reviewed in the light most favorable to the party opposing summary judgment. *Massengill v. Duke Univ. Med. Ctr.*, 133 N.C. App. 336, 515 S.E.2d 70 (1999).

[1] Lowe's argues that whether it notified GATX of its claim under the 1995 agreement and brought action within a reasonable time is a question of fact for the jury. Here, the parties dispute two versions of the 1995 agreement that contain different time limitations as to when Lowe's was required to notify GATX of a claim or file an action against GATX for warehousing "shrinkage" over 0.2%. In either event, the issue on appeal is whether the trial court could determine as a matter of law that Lowe's failed to present its claim and bring an action against GATX within "a reasonable time."

The parties acknowledge that the Uniform Commercial Code (UCC) applies to this case because GATX is a "warehouseman" under N.C. Gen. Stat. § 25-7-102(1)(h) (1999) (" 'Warehouseman' is a person engaged in the business of storing goods for hire"). Article 7 of North Carolina's enactment of the UCC, which deals with warehousemen, incorporates the general definitions and principles of construction and interpretation contained in UCC Article 1. N.C. Gen. Stat. § 25-7-102(4) (1999). Under Article 1, "[w]hat is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." N.C. Gen. Stat. § 25-1-204(2). *See also Superior Foods, Inc. v. Harris Teeter Super Markets, Inc.*, 288 N.C. 213, 217 S.E.2d 566 (1975). Generally, a determination of what is a reasonable time under UCC Section 25-1-204(2) is a question of fact for the jury; however, the issue can become a question of law "only when the facts are undisputed and only when an inference can be drawn as to reasonableness of notice." *Maybank v. Kresge Co.*, 302 N.C. 129, 134, 273 S.E.2d 681, 684 (1981). Moreover, if specific facts and circumstances must be examined to determine what constitutes a reasonable time under N.C. Gen. Stat. § 25-1-204, then such determinations should be made by the fact-finder. *See Superior Foods.*

GATX argues that the trial court properly entered summary judgment because the course of dealing between the parties establish as a matter of law that Lowe's claims under the 1995 agreement were not submitted within a reasonable period of time. Under UCC Section 25-1-205(1), "[a] course of dealing is a sequence of *previous conduct* between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." N.C. Gen. Stat. § 25-1-205(1) (1999) (emphasis supplied). It follows that conduct of the parties to this action after the 1995 agreement may not be used to show a course of dealing. Thus, we must reject GATX's contention that the conduct of the parties in making the 1996 agreement can be used to explain the term "a reasonable time" under the 1995 agreement.

Likewise, we reject GATX's contention that a 29 February 1995 warehousing kerosene contract between the parties established a course of dealing for understanding the 1995 trim-a-tree agreement. The record fails to establish conclusively that the warehousing kerosene contract evidenced a "particular transaction" that could be regarded as showing a "common basis for understanding" the term "a reasonable time" under the 1995 trim-a-tree agreement. Accordingly,

we are unable to conclude as a matter of law that the terms of the 1995 kerosene warehousing contract are sufficiently similar enough to establish the parties' course of dealing in the trim-a-tree warehousing contract.

GATX also argues that the 1996 written agreement specifying time limitations may be considered usage of trade as defined by the UCC. N.C. Gen. Stat. § 25-1-205. Usage of trade would allow a consideration of the industry standards to determine contract meaning. *Id.* However, even if the provisions of the 1996 agreement presented evidence of usage of trade, the UCC explicitly sets forth that the parties' course of dealing controls over usage of trade. N.C. Gen. Stat. § 25-1-205 (4).

Nonetheless, GATX cites the commentary[1] to § 25-1-205 to argue that while course of dealing is

> restricted literally to a sequence of conduct between the parties previous to the agreement, . . . the provisions of the Act on *course of performance* make it clear that a sequence of conduct *after . . . the agreement* may have equivalent meaning.

Official Commentary No. 2, N.C. Gen. Stat. § 25-1-205 (emphasis supplied). Under the UCC, course of performance applies where the agreement involves repeated occasions for performance by either party. *See* N.C. Gen. Stat. § 25-2-208. Because the 1995 agreement between the parties did not call for repeated occasions for performance by either party, it does not establish a course of performance relevant to determining the meaning of the 1995 trim-a-tree agreement. Accordingly, we hold that the trial court erred in granting summary judgment in favor of GATX.

---

1. The commentaries printed in the General Statutes were not enacted into law by the General Assembly. Our Supreme Court has stated that

> the General Assembly intended that the commentaries be used to "clarify legislative intent or reflect amendments to the rules . . ." and instructed the Revisor of Statutes to "cause the Commentary to each rule to be printed with the rule in the General Statutes." 1983 N.C. Sess. Laws ch. 701, § 2. This approach by the General Assembly was prudent, since the commentaries contain references to case law of other states and other matters subject to change without the consent or knowledge of the General Assembly. In accord with what we perceive to be the intent of the General Assembly, we will not treat the commentaries printed with the North Carolina Rules of Evidence in the General Statutes as binding authority but, instead, will give them substantial weight in our efforts to comprehend legislative intent.

*State v. Hosey*, 318 N.C. 330, 337-38, n. 2, 348 S.E.2d 805, 810, n. 2 (1986).

**[2]** Lowe's next contends the trial court erred in granting summary judgment for GATX on Lowe's counterclaim for unfair and deceptive trade practices. We disagree.

"It is well established that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under G.S. section 75-1.1." *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.*, 124 N.C. App. 383, 390, 477 S.E.2d 262, 266 (1996). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). *See also* N.C. Gen. Stat. § 75-1.1 (1994). To prevail under this statute, plaintiff must prove: (1) defendant committed an unfair or deceptive act or practice, (2) that the action in question was in or affecting commerce, (3) that said act proximately caused actual injury to plaintiff. *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460, 400 S.E.2d 476, 480 (1991).

In the case at bar, the record shows that in its counterclaim for breach of contract, Lowe's did not allege substantial aggravating circumstances attendant to the breach. "Defendants' claim, at most, is a simple breach of contract, as they have failed to allege any substantially aggravating circumstances which would give rise to an unfair or deceptive practices claim." *Miller v. Rose*, 138 N.C. App. 582, 593, 532 S.E.2d 228, 235 (2000).

Reversed in part, affirmed in part.

Judges McGEE and THOMAS concur.