RECO TRANSPORTATION, INC. v. EMPLOYMENT SECURITY COMMISSION
OF NORTH CAROLINA

No. 8528SC1259

(Filed 17 June 1986)

**Master and Servant § 101— unemployment compensation—truck drivers as independent contractors—no liability of employer for contributions**

The evidence did not support the findings made by the ESC and the findings made thereby were insufficient to support the ESC's conclusions that the truck drivers in question were employees of plaintiff for the purposes of N.C.G.S. Chapter 96, and that plaintiff was liable for unemployment insurance contributions, where the evidence tended to show that plaintiff was financially obligated to purchase and maintain the vehicles used to haul freight; drivers could secure their own contracts to have freight on return trips or could secure freight through a broker; destination, date and time of delivery were not controlled by plaintiff; drivers could select their own routes and assistant drivers or could choose not to use assistant drivers; drivers did not have to telephone plaintiff to make their whereabouts known; drivers could refuse requests by plaintiff to haul loads of freight and instead haul loads which the driver arranged; drivers were personally liable for damages to plaintiff owned vehicles or the freight being hauled if the damage was attributable to the driver's negligence; and drivers made investments of up to $3,000 in equipment for the vehicles.

APPEAL by plaintiff from *Allen, Judge.* Judgment entered 9 July 1985 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 15 April 1986.

This is a proceeding in accordance with procedure established by Employment Security Law, G.S. Ch. 96, commenced on

10 December 1983, to determine whether plaintiff Reco Transportation Company (RECO) is liable for unemployment insurance contributions alleged to be due under G.S. Ch. 96 for the fourth quarter of 1978, all of 1979, all of 1980, all of 1981, and the first quarter of 1982. RECO, formed in 1978, hauls freight throughout the United States.

An investigation of RECO by the Employment Security Commission (ESC) began when an individual who had hauled freight in a truck owned by RECO filed a claim for unemployment benefits. This individual's wage transcripts did not report the earnings that he claimed to have earned in his employment by RECO. An audit and investigation of RECO resulted in a determination that RECO was the employer of all truck drivers who operated tractors and trailers owned by RECO. The ESC made an assessment which RECO protested.

On 10 December 1983, because RECO protested its liability for unemployment insurance contributions, an evidentiary hearing was conducted before Special Deputy Commissioner Charles Brown, Jr. Special Deputy Commissioner Brown, in Tax Liability Opinion No. 1672(B) decreed that, "drivers and assistant drivers performing services for RECO Transportation, Inc., are employees of this employing unit." RECO, maintaining that said drivers and assistant drivers are independent contractors, appealed to the Full Commission and on that same date the Full Commission affirmed the opinion by Special Deputy Commissioner Brown.

RECO appealed to Superior Court. On 29 May 1985, this matter was heard in Superior Court. On 8 July 1985, a judgment was rendered that reversed the Full Commission due to insufficient findings of fact to support the conclusions of law made by Special Deputy Commissioner Brown and affirmed by the Full Commission. The Employment Security Commission excepted to said judgment and appealed.

*C. Coleman Billingsley, Jr., for the Employment Security Commission of North Carolina appellant.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by William P. Farthing, Jr., and William L. Brown, for appellee.*

JOHNSON, Judge.

The only issue that we must decide is whether the findings of fact made by ESC were sufficient to support the conclusion of law that drivers hauling, other than owner-operators, are employees of RECO for purposes of G.S. Ch. 96. G.S. 96-8(6) states the following:

> 'Employment' means service performed including service in interstate commerce . . . performed for wage or under any contract of hire, written or oral, express or implied, in which the relationship of the individual performing such service and the employing unit for which such service is rendered is, as to such service, the legal relationship of employer and employee. . . . [T]he term 'employee' . . . does not include (i) any individual who under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (ii) any individual (except an officer of a corporation) who is not an employee under such common law rules. . . .

G.S. 96-8(6).

ESC, in its brief, concedes the independent contractor status of owner-operators under the common law. *Employment Security Commission v. Hennis Freight Lines*, 248 N.C. 496, 103 S.E. 2d 829 (1958). ESC, in support of its argument, also presents a long established body of common law in North Carolina whereby drivers who own their own trucks and those drivers who operate under leases with motor carriers regulated by the Interstate Commerce Commission are employees of the regulated carriers for purposes of the Workers' Compensation Act. *See Watkins v. Murrow*, 253 N.C. 652, 118 S.E. 2d 5 (1961). However, "the North Carolina Supreme Court . . . made *an exception to the general rule* that one who works according to his own judgment, without being subject to control except as to the result of his work, is an independent contractor, in cases involving trip leases under a lessee's ICC authority." *Smith v. Central Transport*, 51 N.C. App. 316, 320, 276 S.E. 2d 751, 753 (1981). ESC concedes that there are no reported cases in which the aforementioned exception has been extended to unemployment tax liability. ESC argues that it would be inconsistent to allow independent contractor status to drivers for purposes of G.S. Ch. 96 and consider them employees

for purposes of the Workers' Compensation Act. The fallacy with this argument is that our Supreme Court carved out the exception for the Workers' Compensation Act on public policy grounds and dictated that employers must declare drivers to be employees. "The public policy which led to the enactment of the Workmen's Compensation Act likewise required drivers to be classified with the public and entitled to protection from injuries resulting from the interstate operation." *Watkins, supra,* at 658, 118 S.E. 2d at 9.

G.S. 96-15(h)(i) states the judicial standard of review of decisions made by the ESC as follows: "In any judicial proceeding under this section, the findings of fact by the Commission, if there is evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." G.S. 96-15(h)(i). The scope of our review is "a determination of whether the facts found by the Commission are supported by competent evidence and, if so, whether the findings support the conclusions of law." *In Re Baptist Children's Homes v. Employment Security Comm.,* 56 N.C. App. 781, 783, 290 S.E. 2d 402, 403 (1982).

The common law test for determining the legal relationship of parties to an agreement for the performance of work is as follows:

> The test to be applied in determining whether the relationship of the parties under a contract for the performance of work is that of employer and employee, or that of employer and independent contractor is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract. If the employer has the right of control, it is immaterial whether he actually exercises it.

*Scott v. Waccamaw Lumber Co.,* 232 N.C. 162, 165, 59 S.E. 2d 425, 426-27 (1950). Our Supreme Court has also stated that in analyzing the subject relationship there are eight criteria that may be used along with a consideration of other circumstances. Those indicia are whether the person employed:

(a) is engaged in an independent business, calling or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Hayes v. Elon College*, 224 N.C. 11, 16, 29 S.E. 2d 137, 140 (1944). None of the listed indicia, by itself, is controlling and the presence of all is not required. *Id.*

The following excerpted portion of the ESC opinion essentially summarizes the ESC's pertinent findings of fact and its basis for concluding that RECO is liable for unemployment insurance contributions.

In the case at hand, it is clear that Mr. Reece had and has the right to control the activities of his drivers. Mr. Reece may have a good working relationship with his drivers and may allow them wide discretion in both the routes they take and in their efforts to obtain freight. However, Mr. Reece owns one hundred percent of Reco Transportation, Inc., which owns the trucks. The drivers have no investment in the trucks. The drivers have no investment in the cargo. The cargo is carried for third parties. The drivers are expected, if not required, to call the employer each week day. The employer is responsible for approving repairs, etc. The employer is responsible for maintenance of the truck and cost of operating the truck. All drivers and assistants are hired by Dan Reece.

It may be clear to the ESC that "Mr. Reece had and has the right to control the activities of his driver"; however, that is not clear from the ESC's findings of fact nor from the evidence presented to the ESC. The ESC's findings are replete with references to Mr. Reece's financial obligation to purchase and maintain the vehicles used to haul freight, but the findings also state that drivers can secure their own contract to haul freight on return trips or secure freight through a broker. Destination, date and time of delivery is

not controlled by RECO. Drivers may select their own routes and assistant drivers or may choose not to utilize assistant drivers. Drivers do not have to telephone RECO to make their whereabouts known. Upon reviewing the ESC's findings of fact there is only one distinction that can be discerned between owner-operators and non-owners, to wit: the ownership of the vehicles and the financial arrangement with RECO to defray the costs of owning and maintaining the vehicles. "The fact that defendant furnished a truck and two helpers and loaned a saw, shovel, pipe poles does not destroy the independency of the contract." *Hayes, supra,* at 18, 29 S.E. 2d at 142. The findings do not sufficiently reflect RECO's right or lack thereof to "control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract." *Scott, supra,* at 165, 59 S.E. 2d at 426-27. Moreover, the evidence presented to ESC, which does not support the ESC's conclusion, tended to show the following: There was no contract between those drivers who operated RECO owned vehicles and billed RECO for services rendered. Drivers could refuse requests by RECO to haul loads of freight and instead haul loads of freight that the driver arranged. Drivers could and did haul freight for other transportation companies. Drivers were personally liable for damage to RECO owned trucks or the freight being hauled if said damage was attributable to the driver's negligence; drivers made investments of up to $3,000.00 in equipment for the vehicles. The purchase price and maintenance costs of tractor-trailer rigs has risen so that it is not financially feasible for would-be owner-operators to purchase their own tractor-trailer rigs.

In the absence of any discernible public policy or rule of common law, which motivated our Supreme Court to carve out an exception to the general rule for purposes of the Workers' Compensation Act as set forth in *Hennis, supra,* we decline to further extend the exception stated therein. We hold that the evidence does not support the findings made by the ESC and the findings made thereby are insufficient to support the ESC's conclusions that the drivers in question are employees of RECO for purposes of G.S. Ch. 96. Just as the Court stated in *Hayes, supra:*

These circumstances fail to disclose that the parties . . . contemplated or intended that the defendant or its representa-

tives should have any right to control or direct the details of the work or what the workman should do as the work progressed. The opposite conclusion is required.

*Hayes, supra*, at 18, 29 S.E. 2d at 141-42. Accordingly, the trial court's judgment is

Affirmed.

Judges ARNOLD and WHICHARD concur.