STATE OF NORTH CAROLINA, EX REL. EMPLOYMENT SECURITY COMMIS-
SION v. GROVER C. FAULK T/A BLUE EAGLE CAB COMPANY

No. 874SC508

(Filed 5 January 1988)

1. **Master and Servant § 111— decision on unemployment insurance contributions —overruling of exceptions—reasons not required**

   The Employment Security Commission had no duty to state its reasons for overruling respondent's exceptions to its decision that unemployment insurance contributions were due. N.C.G.S. § 96-4.

**2. Master and Servant § 101— unemployment insurance contributions—taxi drivers as employees**

> The Employment Security Commission properly determined that drivers for a taxicab company were employees rather than independent contractors and that respondent owner was liable for unemployment insurance contributions for such drivers where the evidence showed that respondent owns, maintains, stores and insures all of the taxicabs; he sets the work shifts within which drivers must operate; licenses and permits to engage in the taxi business are all in respondent's name; the drivers do not lease the cabs from respondent and do not have the authority to hire assistants or to obtain someone else to drive for them; drivers must compute rates charged to customers from a chart given to them by respondent; and none of the drivers have any investment in the taxicabs or the business.

APPEAL. by respondent from *Small, Judge.* Judgment entered 13 April 1987 in Superior Court, ONSLOW County. Heard in the Court of Appeals 19 November 1987.

This case involves respondent's liability for unemployment insurance contributions under Chapter 96 of the General Statutes. Respondent owns Blue Eagle Cab Company. As a result of an auditor's investigation, petitioner, Employment Security Commission, instituted proceedings to collect over $5,000 in back taxes, interest, and penalties. The assessment was based on the auditor's determination that the company's drivers were "employees," not independent contractors. After a hearing, the special deputy commissioner issued his opinion which contained the following undisputed findings of fact:

3. Mr. Faulk *owns six automobiles* that are licensed by the City of Jacksonville and the State of North Carolina as taxicabs. He obtains individuals to drive these taxicabs for him. None of the individuals who drive his taxicabs have an investment in the taxicabs or in the business itself.

4. All licenses and permits are in the name of Grover C. Faulk. Each driver does have a permit to drive in the City of Jacksonville. Any taxi driver who drives in the City of Jacksonville must have a permit issued by the city. The Certificate of Public Convenience and Necessity required by the city to operate the taxicab company is issued to Mr. Faulk only. None of the drivers who drive taxicabs owned by Mr. Faulk have a Certificate of Public Convenience and Necessity issued by the city.

5. All insurance on the taxicab business is provided by and is in the name of Mr. Faulk. He also provides a life and accident policy on three of his drivers.

6. Mr. Faulk is responsible for all of the maintenance on the vehicles.

7. Mr. Faulk maintains an office that is equipped with a telephone and a two-way radio to be used to contact the taxicabs. A disptacher [sic] is not, however, always available for the drivers.

8. Individuals seeking to drive for Mr. Faulk contact him and if they have the necessary permit and license, complete the application, pass the police investigation, and if Mr. Faulk has a taxicab available. . . .

9. When a driver picks up a vehicle at the beginning of the shift, the fuel tank is full. At the end of the shift, the driver returns the vehicle with a full fuel tank. Cost of the fuel is deducted from the gross amount of the fares collected by the driver during his shift. After the cost of the fuel has been deducted, the driver and Mr. Faulk split the remaining income on a fifty/fifty basis. The drivers keep a daily log of their fares and turn in this log when they turn in the fifty percent due to Mr. Faulk.

10. An accepted schedule is for a driver to drive from 6:00 a.m. until 6:00 p.m. or 6:00 p.m. until 6:00 a.m. Drivers may, however, within the time that they are allotted the taxicab, select the times that they will drive.

11. When not being used, the taxicabs are maintained at Mr. Faulk's place of business which is located at his home.

12. Mr. Faulk withholds and reports state income tax on the drivers. He does this on a daily basis when they settle at the close of the shift. This is a result of an audit by the North Carolina Department of Revenue. Mr. Faulk does not withhold Federal income tax or Social Security taxes.

13. Drivers generally drive either in the City of Jacksonville or on the military installations located in the area. Rates are set by the military when the drivers drive on the military installations. Mr. Faulk sets the rates when drivers

drive in the city. This is done on a zone basis. When drivers drive off the military reservation and outside of the City of Jacksonville, the charge is a mileage charge. There are no meters in the cabs.

14. The drivers of Mr. Faulk's cabs may not obtain someone else to drive for them.

15. Drivers may drive outside their assigned shift if the driver on the next shift is not available. Mr. Flagg has a cab assigned to him that no one else drives. Therefore, he may drive on any shift.

\* \* \*

17. The taxicabs are not leased by Mr. Faulk to the drivers.

The special deputy commissioner also found that respondent had the right to control the operation of the taxicabs but chose not to exercise that right. The opinion concluded that the taxicab drivers were employees and ordered respondent to pay the assessment. Respondent submitted exceptions to the opinion which were overruled by the chief deputy commissioner. Respondent then appealed to superior court, which held that the Commission's findings were supported by the evidence and that the Commission had correctly applied the law to those findings.

*Chief Counsel T. S. Whitaker and Staff Attorney C. Coleman Billingsley, Jr., for the petitioner-appellee.*

*Bowen C. Tatum, Jr., for the respondent-appellant.*

EAGLES, Judge.

[1] By his first assignment of error, respondent argues that the Commission's order overruling his exceptions is insufficient for its failure to state the reasons therefor. Respondent contends this case should be remanded for a more specific order. We disagree.

The procedure for determining whether unemployment insurance taxes are due is set out in G.S. 96-4. G.S. 96-4(m) provides, in part, that a party may appeal to the Commission from the initial decision by filing exceptions, stating the grounds and objections for each one. The statute does not require the Commission to

state the reasons for its rulings. In fact, since the appealing party must state the grounds for its exceptions, the mere overruling of the exceptions provides the parties with the reason for the ruling. The Commission has no duty to state its reasons for rulings on exceptions to the decision.

[2] Respondent next assigns as error the Commission's determination that the taxicab drivers were "employees." G.S. 96-8(6)(a) provides, in relevant part, that:

> [T]he term 'employee' . . . does not include (i) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (ii) any individual (except an officer of a corporation) who is not an employee under such common-law rules. . . .

The common law rules for determining whether an individual is an "employee" or an "independent contractor" are fully laid out in *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944).

In *Hayes*, our Supreme Court stated that the decisive test in determining whether someone is an independent contractor is "the retention by the employer of the right to control and direct the manner in which the details of the work are to be executed." *Id.* at 15, 29 S.E. 2d at 139. The court enunciated the following factors to consider in determining whether there is a relationship of employer and independent contractor:

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Id.* at 16, 29 S.E. 2d at 140. No particular one of these factors is controlling and the presence of all factors is not required to show the employed person is an independent contractor. *Id.*

Initially, we note that respondent excepted to the Commission's "finding of fact" that "Mr. Faulk has the right to control the operation of his taxicabs but does not choose to exercise that right." The Commission's findings of fact are conclusive on appeal if supported by any competent evidence. G.S. 96-4(m); *Yelverton v. Furniture Industries*, 51 N.C. App. 215, 275 S.E. 2d 553 (1981). Whether someone is an "employee" is a mixed question of law and fact. *Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965). The question of fact is what the terms, express or implied, of the employment contract are; the question of law is whether those terms show the requisite degree of control. *Id.* The Commission's undisputed findings support its conclusion that respondent retained control over the manner and method which the drivers did their work and, therefore, that the drivers are "employees" of the company. To the extent that the excepted to finding purports to say that respondent retained the requisite degree of control over the drivers to legally classify them as "employees," it is a conclusion of law which is fully reviewable by this court.

Respondent owns, maintains, stores, and insures all of the taxicabs. He sets the work shifts within which the drivers must operate. Licenses and permits to engage in the taxi business are all in respondent's name. The drivers do not lease the cabs from respondent, nor do they have the power to hire assistants or obtain someone else to drive for them. Drivers must compute the rates charged to customers from a chart given to them by respondent. None of the drivers have any investment in the taxicabs or the business.

Some of the Commission's findings tend to show that some of the factors in *Hayes, supra,* indicate the drivers are independent contractors. On balance, however, the Commission's findings clearly show that respondent maintained control over the manner and method of the drivers' work and that the drivers did not retain "that degree of independence necessary to require [their] classification as independent contractor[s] rather than employee[s]." *Id.* at 16, 29 S.E. 2d at 140.

*Reco Transportation, Inc. v. Employment Security Comm.*, 81 N.C. App. 415, 344 S.E. 2d 294, *disc. rev. denied*, 318 N.C. 509, 349 S.E. 2d 865 (1986), cited by respondent, is readily distinguishable. In *Reco*, this court held that the Commission's findings of fact

were insufficient to support its conclusion that certain truck drivers were employees. There, however, the drivers could, and did, secure contracts from other companies to haul freight, selected their own routes, and had the power to hire assistants. Moreover, the employer did not control the destination, date, and time of delivery for the freight; the drivers were not required to notify the employer as to their whereabouts at any time; and the drivers had an investment in some of the equipment on the vehicle.

Conversely, drivers for Blue Eagle Cab Company worked for no other companies. They all drove taxicabs which were similarly painted and which were marked "Blue Eagle Cab Company," handed out business cards with only the company name printed on it, and had no separate telephone or other business listing. Furthermore, drivers could not hire assistants, had no investment in the business, and were required to inform respondent or other drivers whenever they took a fare outside the City of Jacksonville. Further, the testimony of both respondent and his drivers tended to show that they believed that respondent had control over the manner and method which the drivers worked and that any flexibility the drivers had was the result of respondent's failure to exercise control rather than any implied condition of the employment relationship.

While there are numerous decisions on whether a taxicab driver is an employee or an independent contractor, the only North Carolina case we find is *Alford v. Cab Co.*, 30 N.C. App. 657, 228 S.E. 2d 43 (1976). There the court held the drivers to be independent contractors. In *Alford*, drivers rented the taxicabs for a flat, daily fee, kept all the fares and tips and could use the cab for their own purposes during the time it was rented. The employer had no supervisory control over the manner or method the driver chose to operate the cab. We believe *Alford* is clearly distinguishable. Moreover, cases from other jurisdictions support our decision, either by holding under similar facts that the taxicab drivers were employees, *see ESC v. Laramie Cabs, Inc.*, 700 P. 2d 399 (Wyo. 1985); *Yellow Cab Co. v. Industrial Com'n of Illinois*, 124 Ill. App. 3d 644, 464 N.E. 2d 1079 (1984), *aff'd sub nom. Yellow Cab Co. v. Jones*, 108 Ill. 2d 330, 483 N.E. 2d 1278 (1985); *Read v. Warkentin*, 185 Kan. 286, 341 P. 2d 980 (1959); *Redwine v. Wilkes*, 83 Ga. App. 645, 64 S.E. 2d 101 (1951), or by finding that the taxicab drivers were independent contractors based on facts

and circumstances different from this case. *See Romanski v. Prudential Property & Cas. Ins.*, 356 Pa. Super. 243, 514 A. 2d 592 (1986); *Brunson v. Valley Coaches, Inc.*, 173 Ga. App. 667, 327 S.E. 2d 758 (1985); *Rubin v. Weissman*, 59 Md. App. 392, 475 A. 2d 1235 (1984).

The Commission's findings of fact are supported by competent evidence. Those findings support its conclusion that taxicab drivers for Blue Eagle Cab Co. are "employees" within the meaning of G.S. 96-8(6)(a). Accordingly, the judgment of the trial court affirming the decision of the Employment Security Commission is affirmed.

Affirmed.

Judges MARTIN and PARKER concur.

Judge MARTIN concurred in this opinion prior to 31 December 1987.