STATE OF NORTH CAROLINA, Ex Rel EMPLOYMENT SECURITY COMMISSION v.
J. WALTER HUCKABEE T/A RED CARTAGE

No. COA94-1051

(Filed 19 September 1995)

**Labor and Employment § 142 (NCI4th)— loaders as employees and not independent contractors—sufficiency of evidence**

The Employment Security Commission's findings were supported by competent evidence and those findings supported the Commission's conclusion that "loaders" who worked for defendant loading tires onto the trailers of various trucking companies at the Kelly Springfield Tire plant were employees for which defendant owed unemployment taxes where the evidence tended to show that defendant's company maintained control over the manner and method of the loaders' work; the loaders did not retain that degree of independence necessary to require their classification as independent contractors; the loaders had no investment in the business and could not hire assistants; the loaders could and did refuse loads and were not prohibited from working for other cartage companies, but the Commission found an unspecified number of loaders worked on a regular basis for defendant's company and found no evidence that loaders worked for other cartage companies; it was immaterial whether defendant's company supervised and controlled the activities of the loaders or whether the right to supervise and control was delegated to the manufacturer of the tires which were loaded; the parties did not negotiate the terms of the employment contracts which stated that the loaders were independent contractors; and defendant told investigators that the loaders were employees. N.C.G.S. § 96-8(6)a.

STATE ex rel. EMPLOYMENT SECURITY COMM. v. HUCKABEE

[120 N.C. App. 217 (1995)]

**Am Jur 2d, Unemployment Compensation §§ 43 et seq., 54.**

Judge COZORT dissenting.

Appeal by Employment Security Commission from judgment entered 30 June 1994 by Judge Coy E. Brewer, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 6 June 1995.

*T. S. Whitaker, Chief Counsel, and C. Coleman Billingsley, Jr., Staff Attorney, for plaintiff-appellant Employment Security Commission.*

*Singleton, Murray, Craven & Inman, by Richard T. Craven, for defendant-appellee.*

WALKER, Judge.

This is the second appeal brought by the Employment Security Commission (the Commission) from a superior court's reversal of the Commission's decision that "loaders" engaged by appellee J. Walter Huckabee T/A Red Cartage (Red Cartage) to load trailers were employees for which Red Cartage owed unemployment taxes, penalties, and interest. The Commission assessed the unemployment taxes in September 1989 after it determined, pursuant to an investigation and audit, that the loaders were employees instead of independent contractors. Red Cartage protested the Commission's assessment and demand for payment of unemployment taxes owed on wages paid to the loaders, contending that the loaders were independent contractors. Pursuant to the protest, a hearing was held before a Deputy Commissioner, who concluded that the loaders were employees of Red Cartage. After the Commission affirmed this decision, Red Cartage appealed to the superior court, which reversed. The Commission then appealed to this Court. In a decision entered 5 January 1993 pursuant to Rule 30(e), we vacated the superior court's decision on the grounds that it impermissibly made findings of fact and remanded the case to superior court for remand to the Commission. On remand, the Commission affirmed its prior findings, made additional findings of fact, and held that, based on these findings, the loaders were employees. From that opinion, Red Cartage appealed to the superior court. By judgment entered 30 June 1994, Judge Coy E. Brewer, Jr. held that, based on the Commission's findings of fact, the loaders were independent contractors instead of employees and thus reversed the Commission's decision.

STATE ex rel. EMPLOYMENT SECURITY COMM. v. HUCKABEE

[120 N.C. App. 217 (1995)]

The Commission argues that the superior court erred in holding that, based on the Commission's findings of fact, the loaders were independent contractors. The judicial standard of review of decisions made by the Commission is as follows: "In any judicial proceeding under this section, the findings of fact by the Commission, if there is any competent evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." N.C. Gen. Stat. § 96-15 (i)(1993). Our review is thus limited to determining whether the facts found by the Commission are supported by competent evidence and, if so, whether the findings support the conclusions of law. *Reco Transportation, Inc. v. Employment Security Comm.*, 81 N.C. App. 415, 418, 344 S.E.2d 294, 296, *disc. rev. denied*, 318 N.C. 509, 349 S.E.2d 865 (1986). After careful review, we conclude that the Commission's findings of fact are supported by competent evidence. We hold that those findings support the Commission's conclusion that the loaders were employees, and we thus reverse.

N.C. Gen. Stat. § 96-8(6)a (1994) of the Employment Security Act provides, in pertinent part:

"Employment" means service performed . . . for wage or under any contract of hire . . . in which the relationship of the individual performing such service and the employing unit for which such service is rendered is, as to such service, the legal relationship of employer and employee. . . . [T]he term "employee" . . . does not include (i) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor. . . .

In determining whether someone is an independent contractor or an employee, the decisive test is "the retention by the employer of the right to control and direct the manner in which the details of the work are to be executed and what the laborers shall do as the work progresses. . . ." *Hayes v. Elon College*, 224 N.C. 11, 15, 29 S.E.2d 137, 139-40 (1944). The following factors should be considered along with other circumstances:

[Whether] [t]he person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the

STATE ex rel. EMPLOYMENT SECURITY COMM. v. HUCKABEE

[120 N.C. App. 217 (1995)]

work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Hayes*, 224 N.C. at 16, 29 S.E.2d at 140. These factors, if found, point towards a worker's being considered an independent contractor. *Spencer v. Johnson & Johnson Seafood*, 99 N.C. App. 510, 514-15, 393 S.E.2d 291, 293-94 (1990). The presence of no particular one of these factors is controlling and the presence of all is not required. *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140.

The Commission based its decision that the loaders were employees on the following findings of fact:

3. Red Cartage has a contract with various trucking companies to load tires onto their trailers at the Kelly Springfield Tire Manufacturing Plant. The trucking companies bring empty trailers to the Red Cartage lot and pick up loaded trailers for delivery. Red Cartage takes the empty trailers to Kelly Springfield to be loaded with tires [and then] brings the loaded trailers [back] to Red Cartage for the trailers to be picked up by the various trucking companies.

. . .

6. Tires may be loaded five days a week at Kelly Springfield beginning at 7:30 a.m., 1:30 p.m., 7:30 p.m., or 1:30 a.m. Coy Thomas Stewart and Dennis K. Crumpler are both loaders. Crumpler has worked for Red Cartage since 1987 and Stewart since 1988. Crumpler works at 1:30 p.m. and is the number one loader on that shift. Stewart works at 7:30 a.m. and is the number five loader on that shift. Red Cartage . . . obtains the services of various individuals to load the trailers . . .[at] Kelly Springfield. . . .

7. The employer obtains the services of loaders and, in some cases, trains them. The employer apparently stopped training loaders in 1988. It takes approximately one or two days to train a loader. They train with other loaders. Crumpler has trained loaders at the request of . . . the employer's bookkeeper, or . . . the employer's office manager. The employer and Kelly will only allow an individual to be trained one or two days. If an individual is not able to learn the work in [that time], he is not retained.

8. The employer maintains a list of loaders by shift. The employer telephones loaders to report to Kelly when needed. Stewart, who is number five on the 7:30 a.m. shift, will be the fifth loader called. If there are not five loads available on that shift, he may be called for another shift. Loaders are called at approximately 6:00 a.m. for the 7:30 a.m. shift.

. . .

10. Loaders are paid by trailer size and weight. . . .

11. Stewart and Crumpler normally work five days per week . . . [and] . . . normally take the jobs assigned. If they do not take a job, the employer calls the next loader.

12. While there is a turn-over in loaders, some unspecified number of loaders work on a regular basis for the employer and have done so for a period of time.

13. The only equipment involved in loading a truck is a hand-truck [which] belongs to Kelly. When the loader reports to Kelly, he had [sic] to go through the gate guard. He then reports to Kelly personnel at the loading dock. Only one individual is permitted to load a truck. If the Kelly personnel do not recognize or know the loader, they will verify the loader's identity with Red Cartage. The only time more than one loader is allowed is when a loader is training another individual.

14. The loader knows from the telephone call which truck he is to load and what he is to load. He will load the tires provided by Kelly personnel onto the trailer. He will keep a record of the tires loaded and verify the number loaded with Kelly personnel. When the Kelly tally and the loader tally match . . . , the loader is given a pass to leave the Kelly property. . . .

15. The employer had the loader sign a contract that stated that they were contractors. The contract provided for the method of pay. The loaders did not negotiate the contract and had no input into the amount of money to be paid. Loaders had to sign the contract in order to work.

16. . . . J. Walter Huckabee told [Commission investigators] that the loaders were employees.

17. The employer could terminate the services of the loaders at any time without incurring any penalty or financial obligation to

the loaders other than for work already performed. The loaders could cease doing work for Red Cartage at any time without incurring any liability to Red Cartage.

18. . . . Loaders were apparently not prohibited from working for other cartage companies though there is no evidence that any of them did so. . . .

19. . . . Workers were not scheduled in advance but were telephoned prior to the beginning of the shift in an order set forth on a list maintained by the employer. There was no requirement that workers inform Red Cartage of their whereabouts, but those that worked on a regular basis for Red Cartage apparently contacted Red Cartage if they were not at home to be telephoned.

20. . . . Red Cartage did not control and supervise how the trucks were loaded, Kelly Springfield did so.

21. . . . Loaders could refuse loads and did refuse loads. . . .

22. Under the written contracts, . . . the loaders [were] liable for their own negligence. . . .

23. . . . Red Cartage furnished no equipment . . . .

24. . . . Loaders were paid by weight of tire loaded. A special order called for a specific load, and the loader got paid for the weight of that specific load. A full trailer called for the loader to fill the trailer and Kelly required that the loader completely fill the trailer. An experienced loader might be able to get more weight in a trailer . . . . Also, weight varied by the type of tire. A special load might weigh more than the full load due to the type of tire. The loader does not have control over the length of the trailer . . . and loads the trailer to which he has been assigned by Red Cartage when he arrives at Kelly Springfield. The first-called loader or loaders might get a choice of loads, but eventually there would be no choice.

25. . . . There is no indication that any of the loaders carried liability insurance.

26. . . . Loaders had no benefits, were potentially personally liable for any damage, and had no protection from Red Cartage or Kelly Springfield for any at-work injury or death.

In applying the *Hayes* test, the Commission made the following findings (observations) in its order:

(a) The individuals involved loaded trucks. That loading required one or two days' training and would not be classified as an independent business, calling, or occupation. The loaders . . . did not hold themselves out to be in business;

(b) The loaders loaded trucks, which requires one or two days training and does not involve special skill, knowledge, or training to execute the work;

(c) Workers are paid based on the weight of tires and the size of the trailer loaded based on a formula established by the employer;

(d) Workers can be separated for any reason;

(e) Many of the loaders work for Red Cartage five days per week on a regular and ongoing basis;

(f) Workers cannot use assistants;

(g) Not applicable;

(h) Workers worked specific shifts when work was available. A worker could request a shift but work had to be performed during the specified shift.

Respondent relies on *Reco Transportation, Inc. v. Employment Security Comm.*, 81 N.C. App. 415, 344 S.E.2d 294, *disc. rev. denied*, 318 N.C. 509, 349 S.E.2d 865 (1986). In *Reco Transportation, Inc.*, this Court held that evidence was insufficient to support the Commission's findings of fact and that the findings were thus insufficient to support the Commission's conclusion that certain truck drivers were employees. *Id.* at 420, 344 S.E.2d at 297. The Commission's conclusion that the drivers were employees was based on its findings that the employer owned the company which owned the trucks, that the drivers had no investment in the cargo or trucks, that the drivers were expected to call the employer each week day, that the employer was responsible for maintenance of the truck and operating costs, and that all drivers and assistants were hired by the employer. *Id.* at 419, 344 S.E.2d at 296. The Court stated that these findings "do not sufficiently reflect RECO's right or lack thereof to 'control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results con-

forming to the contract.' " *Id.* at 420, 344 S.E.2d at 297 (citation omitted). Moreover, the Court noted that the evidence tended to show, among other things, that: "[t]here was no contract between those drivers who operated RECO owned vehicles [with investments up to $3,000.00 in equipment for the vehicles] and billed RECO for services rendered. [The] [d]rivers could refuse requests by RECO to haul loads of freight and instead [could arrange their own]. . . . [Also, the] [d]rivers could and did haul freight for other transportation companies [and] were personally liable for damage to RECO owned trucks or the freight being hauled [which] was attributable to the driver's negligence . . . ." *Id.* at 420, 344 S.E.2d at 297. The Court reasoned that these circumstances required the conclusion that the parties intended that RECO have no right to control or direct the details of the work or what the truck drivers should do as the work progressed. *Id.* at 420-21, 344 S.E.2d at 297.

The Commission argues that the facts in the instant case are distinguishable from *Reco Transportation, Inc.* and are more analogous to those in *State ex rel. Employment Security Comm. v. Faulk*, 88 N.C. App. 369, 363 S.E.2d 225, *disc. rev. denied*, 321 N.C. 480, 364 S.E.2d 917 (1988). We agree. In *Faulk*, this Court held that the Commission's findings supported its conclusion that taxicab drivers were employees. *Id.* at 376, 363 S.E.2d at 229. The respondent in *Faulk* owned, maintained, stored, and insured all of the cabs, set work shifts within which the drivers must operate, and set the rates the drivers could charge to customers. The drivers did not lease the cabs from respondent, had no investment in the cabs or the business, and did not have the power to hire assistants. *Id.* at 374, 363 S.E.2d at 228. The Court distinguished *Reco Transportation, Inc.* on the grounds that there, the drivers secured contracts from other companies to haul freight, selected their own routes, and had the power to hire assistants; and further that (1) the employer did not control the destination, date, and time of delivery for the freight, (2) the drivers were not required to notify the employer as to their whereabouts at any time, and (3) the drivers had an investment in some of the equipment on the vehicle. *Id.* at 374-75, 363 S.E.2d at 228. The Court stated that the Commission's findings clearly showed on balance "that respondent maintained control over the manner and method of the drivers' work and that the drivers did not retain 'that degree of independence necessary to require [their] classification as independent contractor[s] rather than employee[s].' " *Id.* at 374, 363 S.E.2d at 228 (citation omitted).

STATE ex rel. EMPLOYMENT SECURITY COMM. v. HUCKABEE

[120 N.C. App. 217 (1995)]

In this case, as in *Faulk*, the Commission's findings clearly show on balance that Red Cartage maintained control over the manner and method of the loaders' work and that the loaders did not retain " 'that degree of independence necessary to require [their] classification as independent contractor[s] rather than employee[s].' " Like the taxicab drivers in *Faulk*, the loaders had no investment in the business and could not hire assistants. Although the Commission found that the loaders could and did refuse loads and were not prohibited from working for other cartage companies, it also found that an unspecified number of loaders worked on a regular basis for Red Cartage for a period of time and found no evidence that the loaders worked for other cartage companies. Moreover, while the *Reco Transportation, Inc.* drivers could determine the details such as when and where to haul freight and what route to follow, Red Cartage's loaders had to load the trucks at Kelly Springfield within four set shifts and did so under the direction and supervision of Kelly Springfield. The only discretion the loaders appear to have had was in choosing a load.

Respondent argues that the loaders were not employees because Kelly Springfield, not Red Cartage, had the right to control and direct the manner in which the details of the work were to be executed. We agree with the Commission's conclusion that it was immaterial whether Red Cartage supervised and controlled the activities of the loaders or whether the right to supervise and control was delegated to Kelly Springfield. Control can be implicit if the nature of the business is such that all the control needed can be effected by establishing a certain pattern of operations and engaging persons who, if they respond normally, will conform to the established pattern. *Foster v. Michigan Employment Security Comm.*, 166 N.W.2d 316, 321 (Mich. Ct. App. 1968).

Finally, respondent argues that where, as here, the facts indicate both an employee relationship and an independent contractor relationship, the decision should be based on the clear intention of the parties. Respondent argues that the fact the loaders signed contracts stating they were to be independent contractors clearly indicates the parties' intent to establish an independent contractor relationship. For support, respondent cites *State ex rel. Employment Security Comm. v. Paris*, 101 N.C. App. 469, 400 S.E.2d 76, *affirmed*, 330 N.C. 114, 408 S.E.2d 852 (1991).

In *Paris*, this Court affirmed the trial court's conclusion that a private nurse's assistant was an independent contractor based on its

consideration of the *Hayes* factors and the parties' clear intent to establish an independent contractor relationship. *Id.* at 473, 400 S.E.2d at 78-79. Although the facts indicated both an employer/employee relationship and an employer/independent contractor relationship, the evidence showed that the parties discussed the terms of their agreement and the nurse's assistant understood that she would have the benefit of a higher salary with no deductions and thus no unemployment benefits. *Id.* at 472, 400 S.E.2d at 78. We stated that "[w]hile . . . the parties' intent may not always be so readily apparent as to be a criteria for the determination of whether an individual is an independent contractor, we find that in the case at bar it is helpful to consider the intent of the parties." *Id.* In this case, the parties did not negotiate the terms of the employment contracts but, as the Commission found, the loaders "had to sign the contract in order to work." Further, Mr. Huckabee told investigators that the loaders were employees. We do not find it helpful to consider the intent of the parties under these circumstances.

Reversed.

Judge COZORT dissents.

Judge JOHN concurs.

Judge COZORT dissenting.

I disagree with the majority's conclusion that the loaders were employees, and I respectfully dissent.

I agree with the majority's analysis that, under N.C. Gen. Stat. § 96-15(h) and (i) (1993), the Commission's findings are supported by evidence in the record and are thus conclusive for the reviewing court. I find, however, that when those findings are reviewed under the criteria set forth in *Hayes v. Elon College*, 224 N.C. 11, 15-16, 29 S.E.2d 137, 139-40 (1944), the trial court correctly concluded that the loaders were independent contractors. I thus vote to affirm the trial court's judgment.