STEPHEN P. GRESS, Plaintiff v. THE ROWBOAT COMPANY, INC., and
C&C GRADING, INC., Defendants

No. COA07-961

(Filed 3 June 2008)

**1. Unfair Trade Practices— presumption against employer-employee claims—fictitious employment**

The general presumption against unfair and deceptive practice claims between employers and employees did not apply to a fictitious employment between defendant corporations and plaintiff potential purchaser of the corporations' assets where the owner of the corporations and plaintiff intended for a fictitious employer relationship to exist solely as a cover to enable plaintiff to conduct due diligence measures related to the purchase of defendants' assets while maintaining the confidentiality of the pending transaction; and plaintiff was not to be legitimately compensated for his work as a "nominal" employee, but defendants were to receive a credit at closing for all sums paid to plaintiff as fictitious compensation.

**2. Unfair Trade Practices— fraudulent asset purchase scheme—fictitious employment relationship**

Defendant corporations stated a claim for relief against plaintiff potential purchaser of the corporate assets under the Unfair and Deceptive Trade Practices Act based upon a fraudulent scheme concerning the sale of the assets to plaintiff where defendants alleged that plaintiff induced the owner of defendant corporations to sign an employment agreement by promising that all compensation paid to plaintiff would be reimbursed upon closing of the asset purchase; that plaintiff had no intention of closing on the sale; and that plaintiff used the pending sale to induce one corporation to continue paying him a salary and quarterly profit-sharing bonuses. N.C.G.S. § 75-1.1.

Appeal by defendants from order entered 26 April 2007 by Judge Richard L. Doughton in Iredell County Superior Court. Heard in the Court of Appeals 6 February 2008.

*Templeton & Raynor, P.A., by Kenneth R. Raynor, for plaintiff appellee.*

*Homesley, Jones, Gaines, Dudley, Childers, McLurkin & Donaldson, PLLC, by Mark L. Childers, for defendant appellants.*

McCULLOUGH, Judge.

The sole issue before us is whether the trial court properly dismissed defendants' counterclaim asserting that plaintiff engaged in unfair and deceptive trade practices pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. "In our review of the dismissal of this action pursuant to [N.C. Gen. Stat. § 1A-1,] Rule 12(b)(6) [(2007)], we must consider the allegations of plaintiff's complaint as true." *Arroyo v. Scottie's Professional Window Cleaning,* 120 N.C. App. 154, 155, 461 S.E.2d 13, 14 (1995).

The facts as pled by defendants are as follows: The Rowboat Company, Inc. ("Rowboat") and C&C Grading, Inc. ("C&C") (collectively referred to as "defendants") are North Carolina corporations wholly owned by Robert Wilson ("Wilson"), who is the president of both corporations. Rowboat is engaged in the business of building piers, docks, boathouses, boat slips, and other waterfront structures for residential and commercial customers. C&C is engaged in the business of grading real property and constructing upland amenities for resort developments.

In May 2005, Stephen P. Gress ("plaintiff") approached Wilson about the possibility of buying the assets of both Rowboat and C&C. Plaintiff and Wilson entered into a written letter of intent on 30 May 2005, and plaintiff paid Wilson a $10,000 earnest money deposit, refundable only in the event of a material misrepresentation. Plaintiff represented that he would close the asset purchase within sixty to ninety days.

During negotiations, plaintiff and Wilson agreed that plaintiff would be permitted to observe the operations of the businesses and to conduct due diligence measures in and about the business premises prior to the closing of the deal. Further, in the interest of maintaining the continuity of business, the parties agreed to keep plaintiff's pending purchase of defendants' assets confidential. To that end, the parties agreed to introduce plaintiff as an employee of C&C and entered into a fictitious employment agreement, entitled "C&C Grading Co. Inc. Agreement President Opportunities and

Expectations." Neither party intended for this contract to be a true contract of employment; rather, the parties agreed that defendants would "recoup from [p]laintiff at the closing of the purchase and sale of the [defendants'] assets . . . those sums . . . paid to [p]laintiff as a nominal employee[.]"

Thereafter, plaintiff did not purchase defendants' assets as planned within ninety days. In fact, plaintiff had no intention of purchasing defendants' assets, yet plaintiff induced defendants to continually extend the closing deadline so that plaintiff could continue to draw a salary and receive quarterly profit-sharing bonuses. Further, while acting as a "nominal employee," plaintiff knowingly engaged in a series of unauthorized activities that resulted in financial loss and damage to defendants, including among other acts, upgrading the business's computer network, rebuilding and painting a remote office, and negotiating the purchase of another company.

In January of 2006, it became evident to defendants that plaintiff had no intention and no ability to close the purchase of defendants' assets. C&C terminated the "nominal" employment contract and revoked plaintiff's access to defendants' business premises and records.

Plaintiff brought suit against defendants to recover his $10,000 earnest money deposit. Defendants asserted counterclaims against plaintiff for breach of contract and for Unfair and Deceptive Trade Practices ("the UDTPA claim") under N.C. Gen. Stat. § 75-1.1 (2007). Pursuant to Rule 12(b)(6), plaintiff moved to dismiss the UDTPA claim on the ground that defendants had failed to state a claim upon which relief could be granted. The trial court granted this motion, concluding that the relationship between plaintiff and defendants was that of an employee and employer, and defendants' counterclaim was, therefore, outside of the intended scope of N.C. Gen. Stat. § 75-1.1.

On appeal, defendants contend that the trial court erred in dismissing their UDTPA claim. We agree. Treating defendants' allegations as true and construing their claim liberally, as we must at the Rule 12(b)(6) stage, defendants have alleged that plaintiff engaged in a fraudulent scheme arising from the sale of corporate assets, which is sufficient to establish a claim for relief under N.C. Gen. Stat. § 75-1.1.

"An inquiry into the sufficiency of a counterclaim to withstand a motion to dismiss under Rule 12(b)(6) is identical to that regarding

the sufficiency of a complaint to survive the same motion." *Chesapeake Microfilm, Inc. v. Eastern Microfilm Sales & Service*, 91 N.C. App. 539, 542, 372 S.E.2d 901, 902 (1988). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the trial court must determine " 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.' " *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (quoting *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The court must construe the complaint liberally and "should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.* at 277-78, 540 S.E.2d at 419.

To establish a *prima facie* claim for unfair trade practices, the defendants must show: (1) plaintiff committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, N.C. Gen. Stat. § 75-1.1, and (3) the act proximately caused injury to defendants. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995). " '[T]he unfair and deceptive acts and practices forbidden by G.S. 75-1.1(a) are those involved in the bargain, sale, barter, exchange or traffic.' " *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 444-45, 293 S.E.2d 901, 919 (1982) (quoting *Edmisten, Attorney General v. Penney Co.*, 292 N.C. 311, 316-17, 233 S.E.2d 895, 899 (1977)), *appeal dismissed, cert. denied*, 307 N.C. 127, 297 S.E.2d 399 (1982). The UDTPA is intended to apply " ' "to dealings between buyers and sellers at all levels of commerce." ' " *Sara Lee Corp. v. Carter*, 351 N.C. 27, 32, 519 S.E.2d 308, 311 (citations omitted), *reh'g denied*, 351 N.C. 191, 541 S.E.2d 716 (1999). This Court has held that "it is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception," but "plaintiff must . . . show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452-53, 279 S.E.2d 1, 7 (1981).

## A. Employee-Employer Relationships

[1] As a general rule, there is a presumption against unfair and deceptive practice claims as between employers and employees. *Dalton v. Camp*, 353 N.C. 647, 658, 548 S.E.2d 704, 711 (2001). Ordinarily, in such a context, the claimant must make a showing of business related conduct that is unlawful or of deceptive acts that affect commerce beyond the employment relationship. *Durling v.*

*King*, 146 N.C. App. 483, 488-89, 554 S.E.2d 1, 4 (2001). The rationale behind this general rule is that pure employer-employee disputes are not sufficiently "in or affecting commerce" to satisfy the second element of a UDTPA claim. *Id.* at 489, 554 S.E.2d at 5.

Here, however, defendants do not allege the existence of a true employer-employee relationship. *See State ex rel. Employment Security Comm. v. Faulk*, 88 N.C. App. 369, 374, 363 S.E.2d 225, 227-28 ("Whether someone is an 'employee' is a mixed question of law and fact. The question of fact is what the terms, express or implied, of the employment contract are; the question of law is whether those terms show the requisite degree of control."). *Id.* (citation omitted), *disc. review denied*, 321 N.C. 480, 364 S.E.2d 917 (1988). Defendants allege that both Wilson and plaintiff intended for a fictitious employer relationship to exist solely as a cover to enable plaintiff to conduct due diligence measures related to the purchase of defendants' assets, while maintaining the confidentiality of the pending transaction. Plaintiff was not to be legitimately compensated for his work as a "nominal" employee; rather, the parties agreed that defendants were to receive a credit at closing for all sums paid to plaintiff as fictitious compensation. Thus, the facts alleged by defendants do not establish a true employer-employee relationship; rather, they show a fictitious relationship that would not exist but for plaintiff and defendants' buyer-seller relationship. Furthermore, the conduct at issue all arises from an underlying contract to purchase corporate assets which satisfies the "in or affecting commerce" element of a UDTPA claim under N.C. Gen. Stat. § 75-1.1. *See La Notte, Inc. v. New Way Gourmet, Inc.*, 83 N.C. App. 480, 484-86, 350 S.E.2d 889, 891-92 (1986), *cert. denied, appeal dismissed*, 319 N.C. 459, 354 S.E.2d 888 (1987) (holding that evidence of deceptive conduct in connection with the sale of a restaurant is sufficient to establish an unfair and deceptive trade practice in violation of § 75-1.1). Accordingly, we conclude that the general presumption against unfair and deceptive practice claims as between employers and employees does not apply to the facts before us.

### B. Fraudulent Scheme

[2] Instead, we find the facts before us demonstrate a fraudulent scheme concerning the sale of corporate assets, which is sufficient to establish a claim for relief pursuant to N.C. Gen. Stat. § 75-1.1. In *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 344 S.E.2d 297 (1986), a car dealer induced a customer to sign a purchase agreement for a car by promising her that he would allow rescission of the contract if

she was not satisfied with the car; the car dealer had no intention of keeping such promise. The customer attempted to return the car the next day, and the car dealer refused to rescind the contract and refused to return the customer's money and trade-in vehicle. We reasoned that the plaintiff's evidence "showed not just a breach of promise; it showed a fraudulent scheme, *i.e.*, a contract induced by the defendant's promise to allow rescission of the contract by plaintiff, which promise defendant never intended to keep." *Id.* at 426, 344 S.E.2d at 301. We held that the dealer's misrepresentations to plaintiff were sufficiently "offensive, oppressive and outrageous," to support an award under N.C. Gen. Stat. § 75-1.1.

Here, the facts alleged by defendants are largely analogous to those of *Mapp*. Defendants allege that plaintiff induced Wilson to sign an employment agreement by promising that all compensation paid to plaintiff would be reimbursed upon closing of the asset purchase. Plaintiff's promise to return all compensation paid under the employment contract is much like the car dealer's promise to allow rescission of the purchase agreement in *Mapp*. Thereafter, while plaintiff had no intention of closing on the sale, plaintiff used the pending sale to induce C&C to continue paying him a salary and quarterly profit-sharing bonuses. These facts establish more than just a breach of contract by plaintiff; they show a fraudulent scheme in which plaintiff's misrepresentations were sufficiently deceptive to (1) constitute unfair or deceptive acts (2) in or affecting commerce, which (3) proximately caused injury to defendants. As such, defendants' allegations, treated as true, are sufficient to establish a violation of N.C. Gen. Stat. § 75-1.1.

While defendants may not be able to prove their allegations after the discovery stage, these allegations are sufficient to survive plaintiff's Rule 12(b)(6) motion to dismiss. Accordingly, we reverse the trial court's order dismissing defendants' counterclaim for unfair and deceptive trade practices.

Reversed.

Judges ELMORE and ARROWOOD concur.